JASPER HICKS et als. v. B. F. BULLOCK.

*Deeds—Words of Inheritance—Will—Adverse Possession— Tenants in Common.*

1. The Court will always give such interpretation to the words of a deed as will effectuate its purpose, if the words in any reasonable view will admit of it.

2. Where the words of inheritance only appear in one part of the deed, but the entire language is inartificial and badly expressed, but it appears from the entire instrument that it was the intention of the parties to pass the fee, the Court will construe the deed so as to pass the fee.

3. Where by will land is devised to a trustee, to rent the land and pay the rents over to a person during his life, the *cestui que trust* takes no estate in the land, but only the right to have the rents paid to him.

4. Where land is left to a trustee to receive the profits and pay them over to one person during his life, and after his death to convey the legal estate to certain remaindermen, one of the remaindermen cannot get a possession adverse to the trustee and his co-remaindermen by taking possession under a deed from the person entitled to receive the rents for life. Such possession does not become adverse until after the death of the person entitled to the rents for life.

5. An adverse possession for twenty years by one tenant in common is necessary to bar his co-tenants.

(*Ricks* v. *Pulliam*, 94 N. C., 225; *Staton* v. *Mullis*, 92 N. C., 623; *Bunn* v. *Wells*, 94 N. C., 67; *Cloud* v. *Webb*, 3 Dev., 317; *Caldwell* v. *Neely*, 81 N. C., 114; *Ward* v. *Farmer*, 92 N. C., 93; *Page* v. *Branch*, at this Term; cited and approved).

CIVIL ACTION, tried before *Shepherd, Judge,* and a jury, at Spring Term, 1885, of GRANVILLE Superior Court.

It appears that Howell Hicks and Frances Hicks, brother and sister, in 1842, entered upon, and continued in joint possession of the land in controversy, as tenants in common, until the death of Frances in 1847, claiming title thereto by virtue of two deeds of conveyance, copies of which are as follows :

"Know all men by these presents, that I, James Bullock, of the county of Granville and State of North Carolina, hath, for and in consideration of the sum of eighty-six dollars, to me in hand paid by Howell T. Hicks and Frances Hicks, both of the county and State aforesaid, the receipt of the same is hereby acknowledged, and himself fully satisfied, do, by these presents, give, grant, bargain, sell, enfeoff and convey unto the said Howell T. Hicks and Frances Hicks, one certain tract or parcel of land, lying and being in the county of Granville and State aforesaid, adjoining the lands of John Webb, William A. Gill and others, containing eighty-five acres and one half, more or less, this land being two equal

shares of an undivided tract of land called and known as the Scallion tract, containing three hundred acres, which land descended to the heirs of the late Charles Bullock, deceased, by the will of the late Jeremiah Bullock, deceased, these two shares, one being owned by me and the other by Louisa Laws, who is at this time under lawful age. I, the said James Bullock, do, by these presents, bind myself, my heirs, executors, administrators or assigns, to warrant and defend unto the aforesaid Howell T. Hicks and Frances Hicks, and their heirs forever, a good and lawful title for the aforesaid land against my heirs or the heirs of the aforesaid Louisa Laws, or the claim or claims of any person or persons whatsoever, to their own proper use, free from all incumbrances.

Given under my hand and seal, the 7th day of December, 1841.

The other deed was as follows:

"Know all men by these presents, that I, John N. Gill, of the county of Granville and State of North Carolina, have, for and in consideration of the sum of one hundred and eighty-nine dollars and thirty-seven cents, to me in hand paid, the receipt for the same is hereby acknowledged and myself fully satisfied, do, by these presents, give, grant, bargain, sell, enfeoff and convey unto Howell T. Hicks and Frances Hicks, both of the county of Granville and State aforesaid, three lots or parcels of land, lying and being in the county of Granville and State aforesaid, adjoining the lands of John Webb, William A. Gill and others, containing by estimation 127 acres, it being three equal shares of one undivided tract of land called and known as the Scallion tract, containing 300 acres, which land descended to the heirs of Charles Bullock by the will of Jerry Bullock, dec'd. And I, the said John N. Gill, having purchased of Edward Jones the two equal shares of the said Jeremiah Bullock and Joshua Bullock had in the aforesaid land; likewise having purchased of William Forsythe and wife three equal

shares in the said tract of land, making in the whole 127 acres, as above stated; quit all claim and relinquish all manner of right and title in the aforesaid lands to the aforesaid Howell T. Hicks and Frances Hicks. And do for myself, my heirs, executors, administrators and assigns, forever warrant and defend the right, title and estate of the aforesaid land unto the aforesaid Howell and Frances Hicks, to them and their heirs, forever, against all lawful claims or claim whatsoever."

The Court below held that these deeds were sufficient to pass the fee simple in the land embraced by them, and the defendant having excepted, assigned this as error.

Frances Hicks died leaving a will, in which she devised her interest in the lands mentioned, as follows:

" Item the second—I do hereby devise to my brother, Thomas Hicks, his executors and assigns, my undivided one half of the following tract of land, situate, lying and being in the county of Granville and State aforesaid, adjoining the lands of William A. Gill, John N. Gill and others, being the tract on which I now reside, and containing three hundred acres, more or less. In trust, nevertheless, and upon the following trust and confidence, to-wit: The said Thomas Hicks shall and may annually rent out my said undivided half interest in said tract of land, and the money arising from said renting he shall pay to my brother, Howell T. Hicks, or to his order, during the natural life of the said Howell T. Hicks, and the receipt of the said Howell T. Hicks for said rent shall be a sufficient discharge. And after the death of the said Howell T. Hicks, the said Thomas I. Hicks, trustee as aforesaid, shall convey said undivided interest in said tract of land to John T. Hicks, William Hicks, Eliza I. Hicks, Lucy J. Hicks, Sarah H. Hicks, Martha Hicks and Jasper Hicks, and such child or children as shall be born of the body of Sarah D. Hicks—the wife of the said Howell T. Hicks—so as to make them a good fee simple to said land."

Howell Hicks continued in the possession of these lands until the 15th day of October, 1853, when he executed a deed purporting to convey the whole of the land mentioned to John T. Hicks, who was his son, and one of the devisees named in the clause of the will above recited. He then took possession of the land, and he and those claiming under him, including the defendant, have ever since had possession thereof under known and visible boundaries, claiming under and by virtue of the deed so made to him by his father.

Howell Hicks died on December 9th, 1859.

Thomas Hicks, named in the clause of the will above set forth, died in 1883. This action was begun on the 27th of May, 1882.

The plaintiffs claim under the will of Frances Hicks, the material clause of which in this connection is set forth above, and devises to them, after the death of Howell Hicks, her undivided one half of the land in controversy.

The defendant contended on the trial, first, that the continuous possession of the land up to known and visible boundaries of himself, and that of those under whom he claims, beginning with that of John T. Hicks, under color of title, was for a longer period than *twenty years*, and adverse to Thomas Hicks, the trustee, and the plaintiffs, though they might have been tenants in common with those under whom he claims, and himself, and therefore his title became, and is perfect; and secondly, that if this is not true, then he and those under whom he claims, have such possession under color of title adverse to Thomas Hicks, trustee, and the plaintiffs, next after the death of Howell Hicks, on December 9th, 1859, for a longer period than *seven years*, and therefore his title became, and is, perfect. The Court declined to so decide, and such refusal is assigned as error.

There was a verdict and judgment for the plaintiffs, and the defendant appealed to this Court.

*Mr. John Devereux, Jr.,* (*Messrs. Joseph B. Batchelor* and *Armistead Jones* were with him), for the plaintiffs.
*Mr. J. W. Hays,* for the defendant.

MERRIMON, J., (after stating the facts). It is not denied that Howell Hicks and Frances Hicks had the absolute title to the land in question, if the two deeds mentioned, made to them, were sufficient to convey the fee simple estate therein. That such was their purpose is manifest from their terms, phraseology and scope. They are, however, very unskilfully drawn. While each of them contains the essential words of inheritance, these words do not appear directly in their proper connection, and their constituent parts appear disorderly.

In such case, it is the duty of the Court to give the deed such interpretation as will effectuate the purpose clearly appearing, if the words and phraseology, in any reasonable view of them, will admit of it. Hence it was said in *Ricks* v. *Pulliam,* 94 N. C., 225; " the Court will have regard to the whole instrument, and not simply the orderly parts; it may, and ought, if need be, transpose words, clauses and sentences, and sometimes parts of sentences not in juxtaposition. Such tranposition, however, must be reasonable, render the whole instrument consistent, and give effect to the obvious intent."

The Court is anxious to ascertain and give just effect to the instrument to be interpreted. *Staton* v. *Mullis,* 92 N. C., 623; *Bunn* v. *Wells,* 94 N. C., 67.

The material parts and words of the first of the deeds before us, thus interpreted, must be read thus: *  *  * "do by these presents give, grant, bargain, sell, enfeoff and convey unto the said Howell T. Hicks and Frances Hicks, the land described, *  *  * to them and their heirs forever." Otherwise but a life estate will pass by the deed, and these important words of inheritance, found in it, and intended to have meaning and effective application, must be treated as having no meaning or effect. This cannot be allowed.

And for the like reason, the similar words and parts of the second deed, must be read thus :   *   *   *   *   " do by these presents give, grant, bargain, sell, enfeoff and convey unto Howell T. Hicks and Frances Hicks, (the land described) *   *   *   *   quit all claim, and relinquish all manner of right and title in the aforesaid lands, to the aforesaid Howell T. Hicks and Frances Hicks   *   *   *   *   to them and their heirs forever."

Thus read, the material words and parts found expressed in both deeds, have reasonable meaning and application, as well as the just effect clearly intended.

It follows then, that Howell T. Hicks and his sister Frances were tenants in common of the land in question, until her death in November, 1847.

By her will, she devised her part of it to her brother Thomas, in trust, that he should let the same, and pay the money arising from the rents thereof to her brother Howell, during his life-time.   At his death, she directs Thomas to convey her one half of it to the plaintiffs.

Howell Hicks had no estate in his sister's one half of the land—he had only the right to have the money arising from the rents of it during his life-time, and his deed to his son, although it purported to convey the absolute estate in the whole of the land, only had the effect to convey his part of it—whatever that might be.   He could not pass what he did not have.

Whatever equitable rights they may have had prior to that time, the equitable estate of the plaintiffs did not begin until the death of Howell T. Hicks, and their estate could not be prejudiced by the possession of John T. Hicks, to whom Howell conveyed, and who had the sole possession from and after the 15th of October, 1853, the date of his deed, until the 20th of March, 1856, when he sold the land to the appellant and H. Freeman, who then took possession thereof.   This is so, because John T. Hicks was one of the

*cestuis que trust,* for whom the trustee, Thomas Hicks, held the legal title, and it would be a fraud on his part to hold possession adversely to his trustee, and to the prejudice of his *cestuis que trust.* He could not be allowed by such contrivance to defeat the legal title of the trustee and the equitable estate of the *cestuis que trust,* he being one of them, not then in existence, nor could the defendant be allowed to avail himself of the benefit of such possession. To do so would be unjust and inequitable.

The learned counsel of the appellant sought by an earnest and interesting argument, to convince us that at all events the defendant's title had ripened into a good one, by seven years' continuous adverse possession of the land, up to known and visible boundaries, with color of title.

Granting that the appellant had such possession, it was adverse to his co-tenants in common, and whatever difference of opinion there may have been on this subject in this State in the distant past, it is now well settled that it does not in such case have such effect. It requires such a possession continued for at least twenty years to defeat the estate of the co-tenant in common. The subject has been so fully discussed in numerous cases, it is only necessary to cite some of the leading ones   *Cloud* v. *Webb,* 3 Dev., 317; *Caldwell* v. *Neeley,* 81 N. C., 114; *Ward* v. *Farmer,* 92 N. C., 93; *Page* v. *Branch,* decided at this Term. Judgment affirmed.

No error.                              Affirmed.