GEORGE B. WEBB et al. v. P. R. BORDEN et al.

(Filed 10 October, 1907).

1. **Deeds and Conveyances—Fraud or Mistake—Pleadings—Evidence.**

When plaintiff claims under a deed, the terms and provisions of which are set forth in the complaint, in the absence of any averment of mistake, they will not be permitted to introduce testimony for the purpose of showing a mistake of the draughtsman. The same principle applies when the original deed is lost and a substituted one is set out in the complaint.

2. **Same—Mistake—Correction—Chain of Title—Pleadings—Question for Jury.**

A plaintiff in an action for the recovery of land may, upon proper averment and proof of mistake, have a deed in his chain of title corrected. The facts upon which the equity for correction is based must be alleged, to the end that, if denied, an issue may be submitted to the jury.

3. **Same—Trusts and Trustees—Ouster—Action.**

When the trustees holding lands impressed with an active trust in favor of J. B. for life, remainder to themselves, permit J. B. to be ousted by a stranger, such ouster puts the trustees to their action, and the statute of limitations began to run against them from the ouster.

4. **Same—Trusts and Trustees—Ouster—Limitations of Actions.**

Under Revisal, sec. 1580, trustees are seized as joint tenants and not as tenants in common.; where there is an ouster of J. B., the *cestui que trust,* under a deed made by one of them, act-

ing as commissioner under a judicial proceeding, to a third party, such deed is color of title. The seven years statute of limitations will bar the right of entry of all the trustees and their *cestuis que trustent.*

5. **Same—Trusts and Trustees—Fraud or Mistake—Equity.**
    Land was granted to several children in trust to pay over the rents and profits to their father, and provide a home thereon for him and his family for life, remainder to the children, trustees. In proceedings for partition before the Clerk, one of the children was appointed commissioner to sell, and did sell, and, by deed, for a valuable consideration, convey the land to one under whom defendant claims title. The children, trustees and remaindermen, seek to set aside the deed of the commissioner for fraud participated in by him and the Clerk of the Court, since dead, upon the parol testimony of the commissioner: *Held,* after the lapse of twenty-seven years courts of equity will not interfere.

WALKER, J., dissenting.

CIVIL ACTION, tried before *Webb, J.,* and a jury, at October Term, 1906, of the Superior Court of LENOIR County, for the recovery of a lot in the city of Kinston.

The facts material to an understanding of the appeal, as shown by admission in the pleadings and the uncontradicted evidence, are: The title to the land in controversy was, prior to March 1, 1869, in James B. Webb, father of plaintiff, George B. Webb, and those under whom the *feme* plaintiff, Emma P. Webb, claim. On the first day of March, 1869, the land was sold by the Sheriff of Lenoir County, under executions issued upon judgments against said James B. Webb, and conveyed to Mary M. Webb, his daughter, who intermarried with Robert S. Hay. Plaintiffs allege that, subsequently, in the year 1869, the said Mary H. Webb conveyed said lot of land by deed in fee simple, as tenants in common, to Benjamin T. Webb, George B. Webb, N. H. Webb (now the wife of H. G. West), J. W. Webb, Carrie J. Webb (now the wife of D. R. Midyette), Emma Webb (now the wife of T. W. Noland) and Martha J. Webb, subsequently the wife of one Lewis Meyer, and who has since died, leaving as her only

heirs at law Lily and Daisy Meyer surviving her.    That in said deed mentioned in the fourth paragraph of this complaint the said James B. Webb was given and granted an estate in said lot of land for his own life, the grantees named in said fourth paragraph to have and to take their interest in the same after the death of the said James B. Webb.    That the said deed was recorded in the Register's office of Lenoir County and said State, in book No. 42, page 295, the records of which have been destroyed by the fire of 1878 or 1880, except the index thereto, and the said deed itself is lost or destroyed and cannot be found, after a thorough search therefor.    That the said Mary M. Webb, who, on 28 June, 1881, was Mary M. Hay, wife of Robert S. Hay, did, together with her said husband, execute, on said 28 June, 1881, another deed in place of said lost or destroyed deed, conveying said lot of land in the same way and manner as did the said lost or destroyed deed, except as to Martha J. Webb, who intermarried with one Lewis Meyer, and she having died prior to said 28 June, 1881, her share in said lot of land is in the substituted deed conveyed to her only heirs at law, Lily and Daisy Meyer.    (See said deed, recorded in said county and State, in the Register's office, in book No. 6, pages 558, 559, 560, as part of this complaint).

The deed of 1 June, 1881, referred to, was put in evidence, and contained the following language: "That, whereas, on or about the first day of March, A. D. 1869, the said Mary M. Hay, then Mary M. Webb, for and in consideration of natural love and affection, did sell and convey to the said Benjamin T. Webb, George B. Webb, N. M. Webb (now N. M. West), J. W. Webb, Carrie J. Webb, Emma Webb and Martha J. Webb (mother of the said Lily and Daisy Meyer), and their heirs, certain tracts or lots of land in the county of Lenoir, in and near the corporate limits of the town of Kinston,  *  *  * adjoining the lots of John Ennis and John D. Long; and, whereas, the said lots of land were by the said Mary M. Hay,

then Mary M. Webb, conveyed and assigned to the said B. T. Webb and others, and their heirs, by a certain deed of absolute conveyance, duly executed, but with the special trust and confidence that they, the said B. T. Webb and others, pay over and deliver to their father, James B. Webb, the rents and profits of said lands during his natural life, and that the said J. B. Webb be allowed to occupy the said premises as a home for himself and family during his natural life; and, whereas, the said deed of conveyance is now supposed to be lost: Now, therefore, this indenture witnesseth, that for and in consideration of the foregoing premises, together with the further consideration of the love and affection to them, the said B. T. Webb and others, borne by the said Mary M. Hay and husband, Robert S. Hay, have given, granted, released, confirmed and quitted claim, and by these presents do give, grant, release, confirm and quit claim unto the said B. T. Webb and others, their heirs and assigns, all their right, claim, interest and property in and to the aforesaid parcels of land, to have and to hold to them, the said B. T. Webb and others, and their heirs in fee simple, forever. But with this special trust: that they pay over annually and deliver to James B. Webb the rents and profits of said lands for and during his natural life, and they permit the said James B. Webb to occupy and use said premises as a home for himself and family during the term of his natural life."

On 17 December, 1874, B. T. Webb, one of the sons of James B. Webb, executed a deed, describing said lots, to R. W. King, in which are set forth the following recitals:

"Whereas, Benjamin T. Webb, commissioner appointed by the court to sell a certain lot of land mentioned in the petition of B. T. Webb, Lewis Meyer and wife (Martha Jane), George B. Webb, Nannie Webb, Caroline J. Webb, Emma Webb and James B. Webb and wife, Margaret; and, whereas, in pursuance to the order of said court, I, Benjamin T. Webb, commissioner, as aforesaid, having advertised said lot of land,

agreeably to law and agreeably to the order of said court, for more than thirty days, did expose the same at public sale at the courthouse door in the town of Kinston, Lenoir County, on 14 December, A. D. 1874, when and where Richard W. King became the purchaser, he being the last and highest bidder," etc.

R. W. King conveyed the lot to one Anthony Blount, and, by a connected chain of conveyances, such title as King acquired vested in the defendants Peter R. Borden and E. W. Borden during the year 1885 and 1886, at which time they entered into possession, and have continued therein, claiming under said deed, until the institution of this action, 1 April, 1902. The deeds from King and others in the chain of defendants' title, including those to themselves, are duly recorded. Plaintiffs allege that the deed of B. T. Webb, commissioner, to King was void and conveyed no title, by reason of fraud, misrepresentation, etc., in respect to the alleged proceedings under which it purports to have been made, etc. It is unnecessary to set forth in detail plaintiffs' contentions in this respect. James B. Webb died 3 August, 1901. Plaintiff George B. Webb was of full age 8 July, 1876. The youngest child, a daughter, was of full age 17 February, 1888. All of the daughters married before reaching their full age. The children of James B. Webb, except plaintiff George B. Webb, executed deed for such interest as they had in the lot to plaintiff Emma P. Webb, wife of George B. Webb, after the death of their father.

Plaintiffs demand judgment for possession of the land, and damages for withholding, etc.

Defendants, conceding that James B. Webb owned the lot, and that his title vested in his daughter, Mary, allege that, by virtue of the deed of B. T. Webb, commissioner, and the *mesne* conveyances, they are the owners thereof. They also rely upon the several statutes of limitation, etc.

His Honor was of the opinion, first, that the deed executed by Mary Hay 28 June, 1881, referred to in paragraph seven of the complaint, did not vest a life estate in James B. Webb; second, that parol evidence was not admissible to contradict the averments in allegation seventh of the complaint. He expressed the opinion that plaintiffs were not entitled to recover, whereupon they excepted, submitted to judgment of nonsuit, and appealed.

*Loftin & Varser* and *Wooten & Wooten* for plaintiff.
*Rouse & Land, Y. T. Ormond* and *W. D. Pollock* for defendant.

CONNOR, J., after stating the case: Plaintiffs, proposed to show by B. T. Webb that the deed of 1 March, 1869, made by Mary M. Webb, who intermarried with Robert S. Hay, conveyed the lot in controversy to James B. Webb and his wife for their joint lives and the life of the survivor, remainder to their children. It was admitted that the courthouse "in which the deed was recorded was destroyed by fire during the year 1880, and that the original deed was lost." The Court, upon defendants' objection, excluded the testimony, and plaintiffs excepted. The purpose of the proposed testimony was to avoid the effect of the substituted deed of 28 June, 1881, by showing that the recital therein and the *habendum* were incorrect. It will be observed that, in the seventh paragraph of the complaint, plaintiffs, referring to the deed of 1 March, 1869, and its destruction, say that the said Mary Hay executed the deed of 28 June, 1881, "conveying said lot in the same way and manner as the said lost or destroyed deed" (except that the names of the children of a deceased daughter were inserted). The substituted deed of 28 June, 1881, is made a part of the complaint. It is true that in a preceding paragraph they say that the lost deed, of 1 March, 1869, conveyed to James B. Webb a life estate.

145—13

The deed of 28 June, 1881, which "conveyed the land in the same way and manner," when made a part of the complaint and put in evidence, became the basis upon which the Court must, by its construction, ascertain what estate is conveyed. The plaintiffs, having elected to claim under this deed, cannot show, in the absence of any allegation of mistake in the maker or draughtsman, that the deed of 1 March, 1869, conveyed a different estate from that described in the deed. This would be not only to contradict their own allegation, but the deed under which they claim. While, under The Code system of procedure, it is settled by many decisions of this Court that, in an action for the recovery of land, the plaintiff may, by proper averments, invoke the equitable power of the court to reform a deed in his chain of title, he must make the essential averments, so that the defendant may either admit or deny them, and an issue may be framed presenting the controversy in that respect. He cannot set up a deed as the foundation of his title, and, without amendment of his complaint, when he finds that it does not serve his purpose, attack it by parol evidence. The law is well stated by *Mr. Justice Walker* in *Buchanan v. Harrington,* 141 N. C., 39. Referring to an attempt to introduce testimony of this character, he says: "But the pleadings do not raise any issue to which it was pertinent. If the petitioners desired to have the deed reformed, relying upon their right to the equity of correction, this matter should have been set up by proper averment and a corresponding issue submitted to the jury. * * * If a party demands equitable relief, he must specially allege the facts upon which he seeks the aid of the court in the exercise of its equitable jurisdiction." The wisdom of the law in this respect is illustrated by this record. The parties went to trial upon the allegations in the verified complaint; the deed was made a part thereof, and introduced in evidence. To permit the plaintiffs, without any notice to defendants, to introduce parol evidence of an interested witness, based upon

his recollection of the contents of a deed which, it seems, he saw but once, and then more than thirty years ago, to contradict the solemn declarations by way of recital in another deed made in substitution of the first, more than twenty years ago, would be to place the security of defendants' title upon the slippery memory of the witness, without any opportunity to apply the usual tests or contradict him.    It appears from this record that the deed of 21 September, 1881, was drawn by an intelligent and careful attorney, by whose testimony plaintiffs now propose to contradict it.    This witness, plaintiffs charge, fraudulently executed another deed for this same property.    His Honor's ruling was manifestly correct. To have admitted the testimony would have violated all of those rules of evidence which experience has shown to be essential to the security of titles.

We are thus brought to the consideration of the deed of 28 June, 1881, for the purpose of ascertaining what estate was vested in James B. Webb.    Whatever he acquired by that deed he also had by the deed of 1 March, 1869, because his daughter conveyed by the latter deed "in the same way and manner" as in the first.    Plaintiffs insist that the trust declared was passive, and that, by operation of the statute of uses, James B. Webb took an estate for his life in the land. From this position they conclude that the children had no title to or estate in the lots, other than a vested remainder, until the death of James B. Webb, 3 August, 1901, and that, therefore, the statute of limitations began to run against them at that time.

Defendants, on the contrary, insist that the trust impressed upon the legal title was active, imposing upon the grantees and trustees duties in respect to the property which made it necessary for them to hold the legal title; that James B. Webb took no estate in the land; that the case comes within one of the well-recognized classes not affected by the statute of uses. From this position they conclude that the ouster, under the

deed of B. T. Webb, 17 December, 1874, put the statute of
limitations into operation against the trustees, and that, being
under color, it ripened into a perfect title at the end of seven
years.    The solution of this controversy depends upon the
character of the trust created by the deed.    The lot is con-
veyed to B. T. Webb and others in trust, "that they pay over
annually and deliver to James B. Webb the rents and profits
of said lands for and during his natural life, and they permit
the said James B. Webb to occupy and use said premises as a
home for himself and family for and during his natural life."
It is well settled that "The duty to collect or receive the rents,
profits and income of the estate, and pay over the same to the
persons entitled thereto, is generally inseparable from the per-
sonal control and supervision of the estate by the trustee, and
requires that legal title to the *corpus* upon which the rents and
profits accrue, shall be in the trustee."    28 Am. and Eng.
Enc., 926.    We had occasion to consider the question in *Per-
kins v. Brinkley,* 133 N. C., 154, where we quoted, with ap-
proval, the language of Mr. Tiederman: "Where a special
duty is to be performed by the trustee in respect to the estate,
such as to collect the rents and profits, to sell the estate, etc.,
the trust is called active."    Real Prop., sec. 494.    Whereas,
as said by Mr. Lewin, "If the trust be simply to permit A to
receive the rents, the legal estate is executed in A, this being
a mere passive trust."    Trusts, sec. 18.    In *Hicks v. Bul-
lock,* 96 N. C., 164, it is held that, "Where, by a will, land is
devised to a trustee to rent and pay the rents over to a person
during his life, the *cestui que trust* takes no estate in the land,
but only the right to have the rents paid to him."    In *McKen-
zie v. Sumner,* 114 N. C., 425, *Shepherd, C. J.,* empha-
sizes the fact that the trustee is charged with no specific duties
in respect to the property.    Here the holders of the legal title
are required to "pay over annually and deliver the rents and
profits" to James B. Webb during his life.    How can they
pay over and deliver unless they "rent and collect"?    It

seems clear that to execute the trust, to discharge the duty imposed, they must of necessity hold the legal title, control and manage the property. They are further to permit him to occupy the premises "as a home for himself and family," thus showing the intention of the maker of the deed, that, as to the portion of the property suited for that purpose, the father is to "occupy" for the restricted purpose named, and, as to the other part, they are to rent it out and receive the rents and pay them over to him annually. We think it apparent, in view of the fact that the property had, just preceding the execution of the deed, been sold under executions against him, that it was the purpose of his children to take the title and impress upon it a charge, or trust, for the benefit of their father—to remove it beyond his control or power to dispose of it—in other words, to create an active trust for his benefit. The deed is carefully drawn to effectuate that purpose, and apt language is used to that end. This being settled, it follows, upon the well-settled doctrine of this Court, that the ouster of James B. Webb was the ouster of his trustees, and put them to their action. This principle was clearly announced by *Smith, C. J.,* in *Clayton v. Rose,* 87 N. C., 106, and followed in a well-considered opinion by *Shepherd, J.,* in *King v. Rhew,* 108 N. C., 696; *Kirkman v. Holland,* 139 N. C., 185; *Cameron v. Hicks,* 141 N. C., 21 (7 L. R. A., N. S., 407). The result of this rule is, that, if the trustees are barred, the *cestui que trust* is likewise barred. If this is true, when the trustee is a stranger to the remainderman, the same process of reasoning would seem to lead to the conclusion, with even greater force, that when the trustees were entitled as remaindermen they would be barred after permitting the statutory period to expire. It was the duty of the trustees to bring an action against the disseisor within seven years; they would have recovered the possession to enable them to execute the trust and protect the remainder. If their failure to do so for the statutory period barred their

entry for one purpose or in one right, it must do so for all purposes. It was not only the interest of James B. Webb, which the disseisor acquired by seven years' adverse possession under color of title, but the title as against all who had a right of entry, and, therefore, a cause of action. It would seem that, under our statute (Revisal, sec. 1580), trustees are seized as joint tenants, and not as tenants in common, resulting in the conclusion that, if one is barred of his entry, his cotrustees are also barred. *Cameron v. Hicks, supra.* B. T. Webb was twenty-four years of age in 1874, and plaintiff George B. Webb was nineteen years of age at that time. They are clearly barred, and by the decision of this Court it is settled that their cotrustees are equally so. It is immaterial, for this purpose, whether the ouster be fixed at the date of the deed of B. T. Webb, commissioner, to King, 17 December, 1874, or at the date of defendants' deed, 1885. From either date the same result follows. What we have said is upon the assumption that the deed of B. T. Webb, commissioner, is absolutely void and the entry under it wrongful.

There is, however, another view of the case equally decisive of plaintiffs' contention. The deed from B. T. Webb, commissioner, reciting that proceedings were had in the Superior Court upon the petition of himself and the other owners of the lot, resulting in his appointment as commissioner, sale of the property, payment of the purchase money, etc., was recorded immediately after its execution, and, upon the destruction of the courthouse, recorded a second time, in 1881. There is evidence in the record showing conclusively that the purchasers under that deed took possession, and those claiming under them have continued therein; that the defendants have put valuable improvements upon the property; that plaintiff George B. Webb has made conveyances of adjoining lots calling for the lines of the one in controversy as the property of the purchasers; that all of these facts have been known to him since 1874. It is also apparent that James B. Webb and

other persons having knowledge of these facts are dead. It also appears that B. T. Webb, the person who made the deed and received the purchase money in 1874, being $118, has, since the death of his father, executed a deed to George B. Webb conveying his undivided one-fifth interest, for $500, to the wife of George B. Webb; that the other children have likewise conveyed to her for a recited consideration of $500 for each share. The deed made by B. T. Webb, commissioner, is not, upon plaintiffs' averments, void, but, if they be true, may be in equity set aside for fraud practiced by said B. T. Webb, either alone or, as charged by plaintiffs, in conspiracy with others. In view of these facts, and the lapse of twenty-eight years of unexplained silence, it would seem that a court of equity would refuse to interfere by setting aside the deed. In *Harrison v. Hargrove,* 109 N. C., 346, the time elapsing since the proceeding was only seventeen years; there was an outstanding life estate, and the fact was found that no service was made of the summons on the petitioners. This Court, by *Shepherd, J.,* held that the petitioners were guilty of laches, and relief was refused. His language is peculiarly applicable to this record: "Indeed, if there is anything in the rule which requires long delay to be explained and knowledge of a decree to be negatived, we can conceive of no stronger case than the present one." No one can read this record without being deeply impressed with the remarkable combination of facts and circumstances surrounding plaintiffs' alleged claim. Although it was the imperative duty of the plaintiff George B. Webb and the other children of James B. Webb to protect the interest of their father and secure to him the annual reception of the rents and profits and a home for himself and family, they permit him to be ousted, and remain so for twenty-seven years, by the alleged fraud of their brother; they took no steps to recover the property for his use, and, after his death and the death of the Clerk of the Court, seek to have the deed declared fraudulent upon the

testimony of their brother, whom they charge with active participation in the fraud, and to whom they have paid, as shown by his deed, $500 for his alleged interest in the property which he sold in 1874 and for which he received the purchase money.   It is significant that the Clerk, who is charged with aiding him in perpetuating the fraud, is dead.   In any aspect of the case his Honor correctly directed judgment of nonsuit.

Affirmed.

WALKER, J., dissenting: I do not understand the facts of this case as do my associates.   It seems to me that there was sufficient allegation in the complaint of an intention and agreement on the part of Mary H. Webb (afterwards Mrs. Robert S. Hay) to convey to James B. Webb an estate for life in the land, and whether legal or equitable can make no difference, in the view I take of the law of the case.   If, therefore, the substituted deed of 28 June, 1881, did not convey such an estate as the parties intended should pass to James B. Webb, and, as they distinctly allege, did pass by the original deed, why were not the plaintiffs entitled to establish the mistake, if they could do so by the requisite proof?   If the deed of 28 June, 1881, while intended to take the place of the one of 1869, which gave James B. Webb a life estate, failed, by reason of the mistake of the draftsman to convey a life estate to him, and there was a mutual mistake, as, I think, is sufficiently alleged in the complaint, though not very formally or with that precision so much to be desired in pleadings, it would seem that his Honor erred in excluding the evidence offered for the purpose of proving the fact.   Can the mere circumstance that the plaintiffs have placed a wrong construction upon the deed of 1881, as the majority think they have, preclude their right to have it conformed to what was really the purpose in making it?   The substance of the allegation, when properly considered, is—and that is what the plaintiffs really meant— that the deed of 1881 did convey a life estate to James B.

Webb; but if it did not, then that it should be corrected, so as to carry out the agreement of the parties in respect to that contemplated effect of the deed. Pleadings should not be construed too strictly, for narrow and technical interpretations often defeat justice. "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." Revisal, sec. 495. The plaintiffs also allege that all of the successive purchasers had full notice of their equity. The defendants plead that they have had twenty years' adverse possession of the land and seven years' adverse possession under color of title; but there is no plea of the statute especially addressed to plaintiffs' equity for a correction of the deed—and if there were, I doubt if, under the facts and circumstances of this case, as they now appear, it should be allowed to avail the defendants.

I gave my concurrence to the decisions in *Kirkman v. Holland,* 139 N. C., 185, and *Cameron v. Hicks,* 141 N. C., 21, most reluctantly, and only in deference to the prior decisions in *King v. Rhew,* 108 N. C., 696, and *Clayton v. Rose,* 87 N. C., 106, and the greater learning and wisdom of my brethren, because I believe the principle underlying those decisions is essentially wrong, and will work, if it has not already wrought, great injustice. I do not think that when a life tenant is ousted, even though he has only an equitable estate, the legal title being in a trustee for him, and the disseisin continues long enough to bar his trustee, that persons entitled in remainder should be prejudiced by the inaction of the trustee, and there is eminent authority for this position. The bar should operate only against the estate of the life tenant, just as an estoppel is not permitted to extend beyond the estate of the person bound by it. James B. Webb died in August, 1901, and the life estate then fell in. This action was commenced in April, 1902, by the remaindermen, in full time for the assertion of their rights by the plaintiffs.

I am also of. the opinion that there was evidence tending to show that the proceedings for the sale of the land, which are attacked for fraud, irregularity and upon other grounds, were of such a character as not to obstruct the plaintiffs' right to equitable relief.    But his Honor ruled out important and material evidence that plaintiffs proposed to introduce on the other branch of the case, and peremptorily decided that they could not recover.    They were deprived *in limine* of the benefit of proof essential to their success, and finally denied the right to recover in any aspect of the case.    This, in my judgment, was error.    It would, perhaps, have been better to submit the case to the jury upon proper issues, so that the facts might have been found.    The jury may have found against the plaintiffs, but they should, at least, have had an opportunity to prove their case or to develop it.    No issues were framed, but the case was most manifestly tried upon the understanding that proper issues would be submitted when the evidence had all been introduced.    It does not seem to me, upon a review of the entire record, that the plaintiffs have had the full benefit of their legal rights, and, being of this opinion, I must dissent from the opinion of the majority, which I always do with extreme regret.    My inclination always is to concur with them, not only because of their great learning and ability, but also because I well know with what anxious care and patient investigation they consider and decide cases coming before them.    The principle herein applied goes beyond what has heretofore been decided, it seems to me.

I would enter more fully into the discussion of the principle involved in *King v. Rhew, Kirkman v. Holland* and *Cameron v. Hicks* if it would not extend this opinion to an unreason-able length.    I may undertake to express my views at length on that subject at some future and more opportune time.

I. agree with my brethren that this case bears no resem-blance to *Joyner v. Futrill,* 136 N. C., 301, or *Perry v. Hackney,* 142 N. C., 368, and for that reason they were not cited.

---

BRICK *v.* RAILROAD.

---

In the former of those two cases the trust was a passive one, and was executed by the statute of uses, plainly and unmistakably, and, besides, it was clearly confined to the life estate. The remainder was devised, freed and discharged of the trust. In *Perry v. Hackney* the devise was made directly to Nancy Richardson, of the "use, benefit and profit" of the property in controversy. There was no intervention of a trustee, upon whom duties were conferred that created an active trust. She got the whole estate, because the language was capable of no other construction; and the rule in *Shelley's case* was held to apply, as the limitation then was "to the lawful heirs of her body" after her death. The statute of uses had no application, nor did the question presented in this case arise.