BROWN, J., not sitting. *Page 146 
Plaintiffs alleged and offered evidence tending to show that this land lay within the boundaries of a grant to Josiah Collins, and that a chain of title connected said Collins with Solomon Hassell; that Solomon Hassell conveyed this land to Jesse Alexander in 1813, and that Jesse Alexander died leaving five children: (1) Abner Alexander, who died intestate without issue; (2) Joseph Alexander, ancestor in blood of some of the plaintiffs; (3) Martha Spruill, ancestor in blood of the remaining plaintiffs; (4) George Alexander, who conveyed his right in the land in controversy to Thomas Alexander; (5) Thomas Alexander, who conveyed his right and the right acquired from his brother George to one William Cahoon, whose title, plaintiffs alleged, had been acquired by defendant.
Plaintiffs further alleged that their interests, together, equaled one-half, and that the defendant owned the other half; that the land could not be actually divided, and that a sale for partition was necessary.
Defendant admitted that it had acquired the title of William Cahoon, but pleaded sole seisin and averred that it had acquired a good title for the entire tract by adverse possession.
Upon the trial it developed that there lay within the outer boundaries of the tract of land described in the complaint several other tracts of land, referred to upon the trial and in the first issue and in the judgment rendered as (1) A. C. Sawyer to F. C. Patrick; (2) Allen Cahoon, Nos. 1 and 2; (3) Armstrong Tract No. 1; (4) Kemp No. 1; (5) Kemp No. 2; (6) Armstrong No. 2 Swamp; (7) Armstrong (3, 4, and 5). These tracts are the ones named in red ink on the blueprints, and the correctness of their location in relation to the boundaries of the tract of land described in the petition was conceded by plaintiffs.
In order to show title in itself for these several tracts, the defendant offered grants prior to the Josiah Collins grant aforesaid, and deeds to itself foreign to the title under which the plaintiffs claimed, and evidence of possession of each of said tracts by it and its ancestors in title.
Plaintiffs finally, at the conclusion of the testimony, in open court, disclaimed title to any of the tracts referred to in the first issue and admitted that they could not and did not claim title to any of said tracts, and thereupon this phase was eliminated from the case. The court, with the consent of plaintiffs, framed two issues, the first of which involved the tracts of land above described, which the (140) court answered in accordance with plaintiffs' admission that they had no title thereto; the second of which issues involved *Page 147 
the title to the remainder of the land described in the petition outside of the boundaries of the above tracts.
For the purpose of showing sole title in itself for the lands referred to in the second issue (that is, that portion of the land described in the petition outside of the tracts referred to in the first issue), the defendant offered:
(1) Deed from George H. Alexander to Thomas H. Alexander.
(2) Deed from Thomas Alexander to William Cahoon, in 1833, which purported to convey in fee, with warranty, the entire tract of land described in the petition.
(3) Deed from William Cahoon to James S. Cahoon, in 1839, which purported to convey in fee, with warranty, a tract of land which included within its boundaries the tract described in the petition.
(4) Petition filed by Jordan L. Jones, administrator of James S. Cahoon, in 1849, in court of pleas and quarter sessions, asking for a sale of his intestate's lands to make assets, with evidence of the clerk of the court that a diligent search of his office did not show any other papers in his office relative to said proceeding.
(5) Certain entries on the appearance docket for January Term, 1849, of court of pleas and quarter sessions of Tyrrell County.
(6) An account of the lands of Jordan L. Jones sold by his administrator.
(7) Deed from Jordan L. Jones, administrator, to Charles McCleese, which purported to convey in fee the entire tract of land described in the petition. This deed recites that it was made pursuant to a sale by virtue of a petition filed by grantor at January Term, 1849.
(8) Partition proceeding of Martha Sawyer et al. v. C. E. Tamem et al. The pleadings alleged that the parties to this proceedings were the owners in fee simple of the entire tract of land in controversy, and the court ordered the sale of the said tract and appointed M. Majette commissioner. The sale was made and duly confirmed and Majette, commissioner, was ordered to make deed to C. R. Johnson, the purchaser.
(9) Evidence tending to show that the parties to said proceedings were all the heirs at law of Charles McCleese.
(10) Deed from M. Majette, commissioner, to C. R. Johnson (general manager of the Richmond Cedar Works in North Carolina), in 1893, made pursuant to the last-mentioned special proceeding and purporting to convey in fee several tracts of land, the second of which included the land now in controversy. *Page 148 
(11) Deed from C. R. Johnson and wife to Richmond Cedar Works, in 1905, which purported to convey in fee several tracts of land, (141) the third of which included the land now in controversy. This deed recites that this tract and one other were bought and held by said Johnson for the Richmond Cedar Works.
(12) Evidence of adverse possession set out in the record.
The principal contentions of appellants at the trial in the lower court were: (1) That they and defendant, and its ancestors in title, were tenants in common, and that, therefore, seven years adverse possession was not sufficient to bar their rights, and (2) that if seven years possession was sufficient, there was no evidence of such possession fit to be considered by the jury.
Defendant, appellee, contends, first, that it is now settled that adverse possession by defendant, or those under whom it claimed, for seven years is a complete and perfect defense to plaintiff's action.
Assuming, as it further says, for the sake of argument, that some eighty years ago, when Jesse Alexander died, his children became tenants in common of the land in controversy, and that the effect of the conveyance from George H. Alexander to Thomas H. Alexander was only to convey an undivided one-fourth interest in the locus in quo, and that the effect of the conveyance from Thomas Alexander to William Cahoon and from William Cahoon to James S. Cahoon, although they purported to convey the entire interest, was only to convey a one-half interest to James S. Cahoon and to create him a tenant in common with the other heirs of Jesse Alexander, yet when the court, upon the petition of the administrators of James S. Cahoon, ordered the sale of the entire land and it was sold to Charles McCleese and deed was made to him, and when the court later, in the partition proceeding brought by the heirs at law of Charles McCleese, purported to order the sale of the entire tract, and upon the sale being reported to it entered an order of confirmation and directed deed to be made to the purchaser, who paid the purchase money, either or both of these judicial proceedings and the deeds made under either or both of them, were equivalent to an actual ouster of any other tenants in common, constituted color of title to the whole tract, and seven years adverse possession thereafter was sufficient to bar the entry of any of the plaintiffs, even admitting them to have been tenants in common.
There were exceptions to the charge of the court which will be noticed hereafter.
The verdict was as follows:
1. What interest, if any, do the plaintiffs J. E. Alexander and others own in that portion of the lands described in the complaint or petition *Page 149 
in this cause covered by the various tracts platted on map used in this trial, marked, first, A. C. Sawyer to F. C. Patrick; second, marked Allen Cahoon, Nos. 1 and 2; third, marked Armstrong Tract No. 1; fourth, tract marked Kemp No. 1; fifth, tract marked Kemp (142) No. 2; sixth, marked Armstrong No. 2, swamp; seventh, tract marked Armstrong Nos. 3, 4, and 5? Answer: "None" (by consent of plaintiffs.)
2. What interest, if any, do the plaintiffs J. E. Alexander and others own in that portion of land described in complaint or petition in this cause outside of tracts platted on map used in this trial and referred to in issue 1 by numbers, first, second, third, fourth, fifth, sixth, and seventh? Answer: "None."
Judgment upon the verdict and plaintiffs appealed.
We held in Roper Lumber Co. v. Richmond Cedar Works, 165 N.C. 83, that there is color of title, not where a deed is executed by one tenant in common, which purports to convey the entire interest, the grantor having less than an entirety, but where a deed is executed under a judicial proceeding which purports to sell and convey an entirety, and where some of the tenants in common had been made parties to the proceeding under which the court ordered the sale. Discussing this point, we said: "This Court has held that a deed by one tenant of the entire estate held in common is not sufficient to sever the unity of possession by which the tenants are bound together, and does not constitute color of title, as the grantee of one tenant takes only his share and `steps into his shoes.' In such case twenty years of adverse possession under a claim of sole ownership is required to bar the entry of other tenants under the presumption of an ouster from the beginning raised thereby." Cloud v. Webb, 14 N.C. 317; Hicks v. Bullock,96 N.C. 164; Breeden v. McLaurin, 98 N.C. 307; Bullin v. Hancock,138 N.C. 198; Dobbins v. Dobbins, 141 N.C. 210, and cases cited.
We are not inadvertent to the fact that this State stands alone in the recognition of the principle, the others holding the contrary, that such a deed is good color of title (1 Cyc. 1078 and notes); but it has too long been the settled doctrine of this Court to be disturbed at this late day, as it might seriously impair vested rights to do so. It should not, though, be carried beyond the necessities of the particular class of cases to which it has been applied, but confined strictly within its proper *Page 150 
limits; otherwise we may destroy titles by a too close attention to the technical considerations growing out of this particular relation of tenants in common, and more so, we think, than is required to preserve their rights. This view has within recent years been thoroughly sanctioned by the Court.
"Where less than the whole number of tenants join in a proceeding (143) to sell the common estate for partition, and the same is sold, a deed made under order of the court to the purchaser is color of title, and seven years adverse possession thereafter by him under the deed will bar the cotenants who were not parties." Amis v.Stephens, 111 N.C. 172; McCulloh v. Daniel, 102 N.C. 529; Johnson v.Parker, 79 N.C. 475.
It will be found in the case first cited that there were tenants who were not made parties to the proceeding at law, and yet they were held to be barred by the adverse possession of seven years; and this was because the Court attached importance to the fact that the deed had been made under a decree in a judicial proceeding which closely resembled one made by a stranger to the title held by the cotenants. Only a part of the estate held in common was sold for partition, but the parties to the proceedings claimed the entirety in that part, or purparty, as it is technically called. In that case the Court said: "In deciding this question, though, the proceeding at law is to be regarded as having the same force and effect as a deed of one not connected with the tenancy would have, it purports to sever the relation of all the cotenants, whether it does so in law or not at the time, as against those tenants not made parties to it." And further, "The jury have found that plaintiff has had sufficient adverse possession of the land in dispute for seven years under color to bar the defendant's right, if they ever had any; and as the State has parted with the original title, judgment was properly entered in favor of the plaintiff upon the verdict." This decision leaves nothing to be said in favor of appellants' contention upon this point.
The second position taken by the plaintiffs is that there was no evidence of adverse possession fit to be considered by the jury. This involves the inquiry as to what is adverse possession necessary to ripen title. The possession need not have been during the period next preceding the commencement of the suit; but if the title ripened by adverse possession at any time prior thereto; it will be sufficient for a recovery, unless subsequent to its vesting it had in some way been divested. Christenbury v. King, 85 N.C. 229. The possession need not be unceasing, but the evidence should be such as to warrant the inference that the actual use and accupation have extended over the required period. Berry v.McPherson, 153 N.C. 6. *Page 151 
Judge Bond charged the jury that possession is the making that use of land of which it is susceptible in its present condition; for example, cutting timber from timber land, kept up with such frequency and regularity as to give notice to the public that the party cutting or having it cut is claiming the land as his own, and that it is done in such a way as to constantly expose the party to a suit by the true owner is sufficient if done for the time required by law to ripen the color into a good title. Occasion trespasses will not do. The acts must be such as at all times to subject the party doing the acts to an action at the (144) instance of the true owner. Seven years possession under color of title before suit is begun, under known and visible lines and boundaries adversely, notoriously, continuously and exclusively, will ripen title in the parties having such possession. Plaintiffs certainly could not complain of this instruction, as it is sustained by all the authorities.
In determining the question of adverse possession, Mr. Wood says that the jury may take into consideration the nature and situation of the land, the using of it in the ordinary way by the grantees to whom it was conveyed, and the placing of the deeds on record, passing over the tract, employment of agents living in the neighborhood to look after it and prevent trespasses upon it, payment of taxes continuously under claim of title, and other such facts and circumstances may be considered by them in connection with other acts denoting a claim to it, and the exercise of dominion and ownership over it. Wood on Limitations, sec. 268, p. 569.
What is sufficient to constitute this actual possession depends upon the character of the land and also the circumstances of the case. It involves, as a general rule, the doing of acts of ownership on the land sufficiently pronounced and continuous in character to charge the owner with notice that an adverse claim to the land is asserted. The question whether, in any particular case, there was an actual and adverse possession of the land is usually one of fact for the jury under the instructions of the court. Tiffany Real Property, 1007.
A standard author has said: Actual possession of land consists in exercising acts of dominion over it and in making the ordinary use of it, and in taking the profits of which it is susceptible. This dominion may consist in and be shown by a great number and almost endless combination of acts, and where the statute of limitations has not designated certain things as requisites the law has prescribed no particular manner in which possession shall be maintained and made manifest. Nor, on the other hand, has the law attempted to lay down any precise rules by which the sufficiency of a given set of facts to constitute possession may be determined. It is ordinarily sufficient, if the acts of ownership are of such nature as the claimant would exercise over his own *Page 152 
property and would not exercise over another's. Whether there has been sufficient adverse possession to ripen title is a mixed question of law and fact, and its solution must necessarily depend upon the situation of the parties, the nature of the claimant's title, the character of land, and the purpose for which it is adapted and for which it has been used. All these circumstances must be taken into consideration by the jury, whose peculiar province it is to pass upon the question. The only rule of general applicability is that the acts relied upon to (145) establish such possession must always be as distinct as the character of the land reasonably admits of and be exercised with sufficient continuity to acquaint the true owner with the fact that a claim of ownership, in denial of his title, is being asserted. 1 Cyc., pp. 983, 984; 2 C. J., pp. 54, 55.
As the question still appears to be misunderstood, and is frequently the subject of contention, it may be well to state the principles settled by this Court in former cases. Says Ruffin, C. J.: I think the rule is, that exercising that dominion over the thing and taking that use and profit which it is capable of yielding in its present state is a possession. It is all that can be done until the subject itself shall be changed. It is like the case stated in the books of cutting rushes from the marsh. This is sufficient, though it might appear that dikes and banks would make the marsh arable. Simpson v. Blount, 14 N.C. 36.
And Judge Gaston: Entering upon, ditching and making roads in a cypress swamp, and working timber into shingles, was sufficient possession, if continued for the requisite time, to ripen a defective title into a perfect one. Tredwell v. Riddick, 23 N.C. 56.
And again, by Ruffin, C. J.: The occupation of the pine land by annually making turpentine on it is such an actual possession as will oust a constructive possession by one claiming merely under a superior paper title; and in this opinion the Chief Justice calls attention to the fact that making turpentine from the trees is notice to the true owner, because it is necessarily visible, and the trees are boxed and the sides of the trees are scraped with a round hack, making the work easily visible to the eye. It was, therefore, held that occupation of pine land by annually making turpentine on it is such an actual possession which will in time mature the title against a constructive possession by one claiming merely under a superior paper title. The leading idea is that there shall be notice to the world, so that any one claiming adversely may have an opportunity to assert his title. Moore v. Thompson, 69 N.C. 121.
The court held in Britton v. Daniels, 94 N.C. 786, that the erection of a spring-house and the use of a spring was sufficient adverse possession of a fifty-acre tract of land on which the spring was located. See, also,Staton v. Mullis, 92 N.C. 624, 631. It has further been said that *Page 153 
the test of the sufficiency of the possession to fully mature title depends upon the question of whether a right of action had existed for the statutory period, when the suit was instituted, in favor of the parties against whom the benefit of the laps of time is claimed. Everett v. Newton,118 N.C. 923.
In Coxe v. Carpenter, 157 N.C. 557, the evidence tended to show that the land was only fit for use as timber land, and that Colonel Coxe did not clear any of the land, but he and his tenants every year cut timber from the land to manufacture into lumber and also (146) for firewood and house bote, roads were used and new ones laid out for the purpose of using the land in its then state and condition. In the opinion, the Court said: "There is no doubt but that the possession, if adverse, was open, visible, notorious and continuous, and no owner of land could have failed to take notice of it as an assertion against his title from the very beginning. There was also evidence that the plaintiffs and those under whom they claimed had possession of the land for more than seven years. We are of the opinion that there was sufficient proof of facts showing adverse possession, and the case was properly submitted to the jury for their consideration." The Court quotes from a former case to the effect that possession was as decided and notorious as the nature of the land would permit, and offered unequivocal indication that plaintiff and his father were exercising the dominion of owners and were not pillaging as trespassers. Berry v. McPherson,153 N.C. 4.
We held in Locklear v. Savage, 159 N.C. 238: "What is adverse possession within the meaning of the law has been well settled by our decisions. It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner," citingLoftin v. Cobb, 46 N.C. 406; Montgomery v. Wynns, 20 N.C. 527;Williams v. Buchanan, 23 N.C. 535; Burton v. Carruth, 18 N.C. 2;Gilchrist v. McLaughlin, 29 N.C. 310; Bynum v. Carter, 26 N.C. 310;Simpson v. Blount, 14 N.C. 34; Tredwell v. Reddick, 23 N.C. 56. That decision has been cited and approved in the following cases: Green v. Dunn,162 N.C. 343; Locklear v. Paul, 163 N.C. 338; Christman v. Hilliard,167 N.C. 7; Reynolds v. Palmer, ib., 455; Horton v. Jones, ib., 667; LumberCo. v. McGowan, 168 N.C. 87; McCaskill v. Lumber *Page 154 Co., 169 N.C. 25; Stallings v. Hurdle, 171 N.C. 5; Cross v. R. R.,172 N.C. 122, 125; Holmes v. Carr, ib., 215; Kluttz v. Kluttz, ib., 623;Richmond Cedar Works v. Pinnix, 208 F. 785 (op. by Connor,J.), and more recently in Waldo v. Wilson, 174 N.C. 626, where JusticeBrown thus applies the rule: "There is evidence of an actual occupancy,Possessio pedis, of a very small part of 6317, which defendant undertakes to explain, but that is a question for the jury. The adverse and unexplained possession of so small a part may not give title to the whole tract, but coupled with all the other evidence in the (147) record we think, under our decisions, that, taken as a whole, the evidence is sufficient to go to the jury that they may, under a correct charge, draw their own conclusions from it," citing Locklearv. Savage, 149 N.C. 236; McLean v. Smith, 106 N.C. 172; Hamilton v.Icard, 114 N.C. 538; Bryan v. Spivey, 109 N.C. 67; Osborne v. Johnson,65 N.C. 26; Lenoir v. South, 32 N.C. 241; Christman v. Hilliard,167 N.C. 7.
The plaintiffs contend, though, that there was not sufficient evidence of adverse possession by the defendants. It would be vain and useless, and would serve no good purpose, to review the testimony upon this question in detail. We have examined it carefully and have concluded that there is ample evidence to establish all the elements required to show such an adverse possession as will bar the true owners' right of entry and transfer the proprietorship to the disseisor. The statute of limitations, while it is always destroying titles, is also constantly building them up. It has been well said that where an adverse relation is fixed, and continues for the required period, time covers the transaction as with a mantle of repose. 18 Wallace (U.S.) 493; 25 Cyc. 1168 and note 61. It is truly a statute for the quieting of titles and warns those who sleep upon their rights that if their silence is too long continued they may lose them, for the law favors the active and vigilant. As plaintiffs say that there was no evidence of adverse possession, such as there is must be taken and considered most strongly against them, rejecting all in their favor. We cannot apply this rule without concluding at once that this contention must fail.
The locus in quo is swamp land and could only be used for the purpose of cutting and removing the trees for lumber, they being mostly juniper, which was standing in or near rivers and creeks, such as Alligator River, Northwest Fork, and Juniper Creek. These trees were cut and hauled away, and generally unloaded at Ballast Bank. The premises were, therefore, used and controlled just as would be done by the true owner, and the work was so long continued and so notoriously done as to give fair notice to any claimant of the land, and there is evidence to show that there was actual notice. It was also posted in places to *Page 155 
warn trespassers away. There are other facts and circumstances which more or less tend to show possession of the land in the character of owner, and the doing of such things openly and persistently as indicated a clear assertion of title to it. The jury have found upon such testimony that the defendants had acquired the title by color and sufficient adverse possession, following the instructions of the court, which we deem to be free from any error, and unless there is some sound and valid objection not yet considered, we find no ground for a reversal.
The proceeding, entitled Jordan L. Jones, Administrator of James S. Cahoon v. Sarah Ann and Elizabeth Cahoon, his heirs, while not complete, is sufficient to show a record, consisting of the petition, (148) order of sale of the lands to pay debts of the deceased, and confirmation of the sale to Charles McCleese, account of sale, etc., service of process on the guardian of the two defendants, who were infants, and deed to purchaser; and while some of the essentials must be inferred from the actual existence of others as shown in the roll, all are sufficiently substantiated by the documents themselves and entries on the minutes of the court. There is really more reliable evidence in this case of the pendency of the proceedings in the court of pleas and quarter sessions of Tyrrell, at January Term, 1847, and of their regularity throughout, from the original process to the final decree, than there was in Irvin v. Clark, 98 N.C. 437, as to the validity of the proceedings there in question, for in other material respects there were more deficiencies there, but the court in that case admitted the mere fragment of the minutes which was offered by defendants as evidence of the entire record. Furthermore, the evidence in this case shows that there was a partition proceeding between the heirs at law of Charles McCleese, entitled Martha sawyer et al. v. C. W. Tatem et al., in which the court decreed a sale of the same lands, and they were sold to C. R. Johnson, the sale confirmed and deed executed by commissioner, Mr. Majette, to C. R. Johnson, who conveyed the lands to the defendant.
It would seem that all this record is fully sufficient to bring this case within the operation of the principle settled in Roper Lumber Co. v.Richmond Cedar Works, 165 N.C. 83, where we held that a purchaser at a judicial sale of land which was held in common, made for partition or otherwise, and a deed to the purchaser by the commissioner under the decree of the court were sufficient to constitute color of title, and that seven years adverse possession thereunder would vest the title in the purchaser as against the former tenants so holding the land. We, therefore, find no error in submitting the case to the jury in this respect.
The fact that none of the plaintiffs, as cotenants now claiming the land, made demand upon the defendant or those under whom it holds, *Page 156 
or protested against their acts of trespass during the seven years and more, was surely competent, it being some evidence upon the question of adverse possession, as the failure to list the land for taxes would have been. Austin v. King, 97 N.C. 339. It would be strange if the owner of land should permit it to be occupied and used profitably and adversely by another, under a claim of ownership, without making any claim to it for seven years. This is not the usual conduct in such cases. The fact that the adverse occupancy continued for so long a period of time is some evidence that the plaintiffs knew of it.
The remark of the court to counsel alone, though in the presence and hearing of the jury, as to the legal phase of the testimony, when (149) he asked for the views of counsel, was no expression of opinion within the meaning and intent of the statute. Observer Co. v.Remedy Co., 169 N.C. 251. It was held in Harris v. Greenville TractionCo., 85 S.E. 899, that a remark by the trial judge in overruling a motion for a directed verdict was not in violation of a constitutional provision as an expression of opinion upon the weight or sufficiency of the evidence to prove a fact. 101 S.C. 360. If the court could not call for an argument from counsel upon the law of the case, for example, upon the question of law whether there is any evidence for the jury, trials could not be easily or expeditiously conducted. In a proper case, we have no doubt the learned judges would, in the exercise of their discretion, protect the parties by temporarily dismissing the jury when it appeared that either party might be prejudiced by the discussion of the law. There was no expression of opinion upon the facts, but merely upon the law, and the learned judge did not finally adopt his first impression. There was clearly no prejudice. S. v. Jones, 67 N.C. 285; S. v. Browning,78 N.C. 555; Williams v. Lumber Co., 118 N.C. 928.
If the instructions of the court to the jury were not sufficiently full and explicit, or plaintiffs desired any particular phase of the case to be stated, they should have submitted a special request for what they wanted.Simmons v. Davenport, 140 N.C. 407; Potato Co. v. Jeanette, 174 N.C. 237. In the absence of such a request, we must hold the charge to be free from any error, as it covered the case and was correct in principle, and it was quite responsive to plaintiff's prayers for instructions.
An objection that the judge did not correctly state the contentions of a party, when not made at the proper time, is unavailing. McMillan v. R. R.Co., 172 N.C. 853; S. v. Foster, ibid., 960.
The complaint that the judge did not state the law applicable to both sides, but only on defendant's side, is not supported by the record. Other exceptions are clearly without merit. *Page 157 
After a critical examination of the entire record, and upon a motion to nonsuit, or for the direction of a verdict, viewing the evidence most favorably for the defendants, as we should do (Lynch v. Dewey Bros.,175 N.C. 152), we find no reason to disturb the result.
No error.
Cited: Futch v. R. R., 177 N.C. 284; Sears v. R. R., 177 N.C. 287;Bank v. Pack, 177 N.C. 391; Buchanan v. Furnace Co., 177 N.C. 654;Bradford v. Bank, 182 N.C. 228; Blake v. Case, 183 N.C. 682; Crews v.Crews, 192 N.C. 686; Scales v. Wall, 194 N.C. 805; Murphy v. Power Co.,196 N.C. 493; Connor v. Mfg. Co., 197 N.C. 68; S. v. Casey, 201 N.C. 624,625; S. v. Lea, 203 N.C. 322; Stephens v. Clark, 211 N.C. 89; Berryv. Coppersmith, 212 N.C. 55, 56; Perry v. Bassenger, 219 N.C. 847; Baileyv. Hayman, 220 N.C. 406; S. v. Todd, 224 N.C. 777; Perry v. Alford,225 N.C. 147; Wallin v. Rice, 232 N.C. 373; Price v. Whisnant, 236 N.C. 386;Newkirk v. Porter, 237 N.C. 119; Everett v. Sanderson, 238 N.C. 566;Johnson v. McLamb, 247 N.C. 537; Yow v. Armstrong, 260 N.C. 290. (150)