DOBBINS v. DOBBINS.

(Filed April 24, 1906).

*Trial—Credibility of Witnesses—Question for Jury—Tenants in Common—Adverse Possession—Ouster—Disability of Parties.*

1. When there is a disputed fact depending for its proof upon the testimony of witnesses, the credibility of the witnesses is always a question for the jury and this is so though the testimony may be all on one side and all tend one way. In the latter case, the judge may charge the jury if they find the facts to be as testified by the witnesses to answer the issue in a certain way, but not, upon the evidence, so to answer it, as by such a charge he passes upon the credibility of the witnesses.

2. Tenants in common hold their estates by several and distinct titles, but by unity of possession, and an entry by one enures to the benefit of his co-tenants, not only as concerns themselves, but also as to strangers.

3. There may be an entry or possession of one tenant in common which may amount to an actual ouster, so as to enable his co-tenant to bring ejectment against him, but it must be by some clear, positive and unequivocal act equivalent to an open denial of his right and to putting him out of the seizin. Such an actual ouster followed by possession for the requisite time will bar the co-tenant's entry.

4. Where the proof showed an exclusive, quiet and peaceable possession by a tenant in common and those under whom he claimed for more than 20 years, the law presumes that there was an actual ouster of the other co-tenant's possession, not at the end of that period, but at the beginning, and that the subsequent possession was adverse to the co-tenants who were out of possession, which defeats their right to partition or to an ejectment.

5. The disability of some of the parties, during the period when the possession was held by the defendants and those under whom they claim, cannot be permitted to rebut the presumption of the law as to the ouster, where the possession commenced in the lifetime of their ancestor, from whom they claim and who was, at the time the adverse possession commenced, under no disability.

6.  *Quere:* What is the true construction of section 146 of The Code
     (now Revisal, 386,) with reference to causes of action founded
     upon an ouster, which occurred since the date of its adoption in
     1868 ?

ACTION by David Dobbins and R. E. Stafford, Jr., by his
next friend, against Sarah Dobbins and others, heard by
*Judge W. B. Councill* and a jury, at the February Term,
1906, of the Superior Court of IREDELL.

Proceeding for partition of land, which was transferred
from the clerk, upon the issue of sole seizin raised by the
pleadings. The land, which consisted of two tracts, the
"Home" and "Holman" tracts, was originally owned by Milas
Dobbins, who died in 1863, leaving two sons, Alfred and
Augustus Dobbins. Alfred died September 25, 1878, leaving
three children by his first marriage, George, Fannie and John,
and two by his second marriage, David (one of the plaintiffs),
born January 22, 1875, and Una May, born April 12, 1878,
and married to R. E. Stafford April 9, 1901. She died in
August, 1905, leaving a child, R. E. Stafford, Jr., then 3 or
4 years old, who is the other plaintiff. Augustus Dobbins,
the other son of Milas Dobbins, took possession of the land
when his father died, and has remained in possession until
his death in 1901, when his widow, the defendant, Sarah
Dobbins, continued in possession of the Home tract to the
bringing of this suit, and of the Holman tract until Sep-
tember 3, 1903, her husband having devised all of the land
to her by his will, which was duly admitted to probate and
introduced in evidence. On September 3, 1903, she con-
veyed the Holman tract to the defendant, Geo. B. Nicholson,
trustee, for the use and benefit of the other defendants, B. F.
Long, D. M. Furches and A. L. Coble. The trustee took
possession on that day and has held it ever since. The court
admitted the evidence of the probate of a paper writing pur-
porting to be the will of Milas Dobbins, the appointment of
the administrator with the will annexed and his qualifica-

DOBBINS *v.* DOBBINS.

tion. The will was not put in evidence, nor did the nature of its contents in any way appear. Plaintiff objected to this testimony.

At the conclusion of the testimony "the court instructed the jury that, upon the evidence, the plaintiffs were not entitled to recover and they should answer the issue 'no.'" Plaintiffs excepted. There was a verdict and judgment accordingly and the plaintiffs appealed.

*Armfield & Turner* and *J. B. Armfield* for the plaintiffs.
*Furches, Coble & Nicholson* for the defendants.

WALKER, J., after stating the case: When the plaintiffs had rested, there was no evidence of any possession of the lands by the defendants. The only testimony in regard to it came from the defendants' witnesses, and the court could not properly give a peremptory instruction to find for the defendants, when the burden of proof had shifted to them by the plaintiffs' proof of title in Milas Dobbins and the descent from him to the plaintiffs and his other heirs mentioned in the case. When there is a disputed fact depending for its proof upon the testimony of witnesses, the credibility of the witnesses is always an open question for the jury, and this is so, though the testimony may be all on one side and all tend one way. In the latter case, the judge may charge the jury if they find the facts to be as testified by the witnesses to answer the issue in a certain way but not, upon the evidence, so to answer it, as by such a charge he passes upon the credibility of the witnesses. We disapproved a similar instruction at this term in *Smith v. Lumber Co.*, and such an instruction has been condemned in many previous decisions besides being expressly forbidden by statute. "No judge, in giving a charge to the petit jury, either in a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, such matter being the true office and prov-

ince of the jury; but he shall state in a plain and correct manner the evidence given in the case, and declare and explain the law arising thereon." Code, sec. 413, Revisal, sec. 535. We should be compelled to order a new trial for this error, if it did not clearly appear that the exception to this instruction was not based upon this ground, but was intended to raise the question, whether the bare possession of the defendants (nothing else being proved) was in law sufficient to bar the plaintiffs' right of entry, and to put the case upon its real merits. There is no reference made in the brief of the plaintiffs' counsel to any error in the charge other than the one relating to the character of the defendants' possession and its legal sufficiency to defeat the plaintiffs' recovery. In this case, the error in the form of the instruction was not perhaps very material and seems to have been so regarded by the plaintiffs' counsel, as there was no serious controversy as to the facts, and a new trial on that ground would be of little or no avail. Before leaving this part of the case, we will remark that the case on appeal was not prepared or revised by the presiding judge, who is always careful and painstaking, and we infer that the charge as given was in proper form and that it was worded by counsel, as it is now, inadvertently, the purpose being to present the real question involved without paying much, if any, heed to matters of form. We will therefore consider the case, as counsel have done in their briefs, as presenting the single question, whether the defendants' proof was sufficient in itself to toll the plaintiffs' entry and defeat their action.

This question has been before this court so often that it ought not now to be difficult of solution. We undertook at the last term, as our predecessors had frequently done before, to state the principle of law by which such cases are governed. Some misunderstanding has arisen by failing to distinguish between the doctrine of adverse possession as applied to the relation of tenants in common, and as applied in

ordinary cases, where there is no such relation, and consequently no privity or fealty as between the parties. The distinction between an actual and a presumed ouster has, perhaps, not been sufficiently taken into account. We will endeavor again to "run and mark the line," and to restate the principle of adverse possession as applicable to tenants in common. Such tenants hold their estates by several and distinct titles, but by unity of possession, because none of them can know his own severalty or, as Littleton puts it, no one of them can tell which part is his own and, for this reason, they occupy promiscuously, the only unity being that of possession. 2 Blk., 192. An entry or possession by one of the tenants enures to the benefit of his co-tenants, not only as concerns themselves, but also as to strangers. *Locklear v. Bullard,* 133 N. C., 260; *Carothers v. Dunning,* 3 S. & R., 381. There may be an entry or possession of one tenant in common which may amount to an actual ouster, so as to enable his co-tenant to bring ejectment against him, but it must be by some clear, positive and unequivocal act equivalent to an open denial of his right and to putting him out of the seizin. It is needless to do more than to state the simple proposition that such an actual ouster followed by possession for the requisite time will bar the co-tenant's entry. But the law goes further, and the rule has been well settled for many years in this State, as it had been before in England, that when one tenant in common has been in undisturbed possession and use of the land for 20 years, in an ejectment brought against him by his co-tenant, the jury will be directed to presume an actual ouster when the possession was first taken and consequently to find a verdict for the defendant. Ouster, or dispossession, says Blackstone, is a wrong or injury that carries with it the assertion of possession, for thereby the wrongdoer gets into actual occupation of the land or hereditament, and obliges him that hath a right to seek his legal remedy in order to gain possession of

the freehold and damages for the injury sustained. It is effected by one of the following methods: 1. Abatement. 2. Intrusion. 3. Disseizin. 4. Discontinuance. 5. Deforcement. The first two consist in a wrongful entry when the possession is vacant—an ouster of a freehold in law. The third, disseizin, is a wrongful putting out of him that is seized of the freehold—an attack upon him who is in the actual possession and turning him out—an ouster from a freehold in deed. The fourth, discontinuance, occurs when the feoffee of tenant in tail holds beyond the life of the feoffor, under a feoffment for a greater estate than the latter can convey, his possession thus retained being considered as an injury to the heir in tail, whose ancient legal estate is thereby destroyed, or at least suspended or for a while discontinued. The fifth and last, deforcement, signifies the holding of any lands or tenements to which another person hath a right and includes all the others and any other species of wrong whatsoever, whereby he who has a right to the freehold is kept out of possession, but is contradistinguished from them in that it is only a detainer of the freehold from him who has the right of property, but never had any possession under that right. 3 Blackstone, 167 et seq. A species of deforcement is, when the ancestor dies seized of an estate in fee simple, which descends to two of his heirs as parceners, and one of them enters before the other, and will not suffer the co-parcener to enter and enjoy her moiety. 3 Blk., 174; Fitzherbert Nat. Brev., 197. We have thus reviewed this subject to show the nature of an ouster, and in order that we may understand clearly what it is the law means when it is said to presume an ouster. It is a disseizin by one tenant of his co-tenant, the taking by one of the possession and holding it against him by an act or series of acts which indicate a decisive intent and purpose to occupy the premises to the exclusion and in denial of the right of the other. This is what the law presumes, whether it be in

exact accordance with the real facts or not. It is a presumption the law raises to protect titles, and answers in the place of proof of an actual ouster and a supervening adverse possession. The presumption includes everything necessary to be proved when the title can be ripened only by actual adverse possession as defined by this court, and is a most reasonable inference of the law and justified under the circumstances, first, because men do not ordinarily sleep on their rights for so long a period and, second, because a strong presumption arises that actual proof of the original ouster has become lost by lapse of time. The period of time requisite to raise the presumption which anciently was required to be of much greater length than now, has by this court been fixed at 20 years in analogy to the statute of limitations barring titles. The rule which has long obtained with us was well stated by *Nash, J.,* for the court, in *Black v. Lindsay,* 44 N. C., 467. "The possession of one tenant in common is in law, the possession of all his co-tenants, because they claim by one common right. When, however, that possession has been continued for a great number of years, without any claim from another who has a right, and is under no disability to assert it, it will be considered evidence of title to such sole possession; and where it has so continued for twenty years, the law raises a presumption that it is rightful, and will protect it. This it will do, as well from public policy, to prevent stale demands, as to protect possessors from the loss of evidence from lapse of time. Possession, then, for twenty years under the above circumstances, will amount to a disseizin or ouster of the co-tenant, and furnishes a legal presumption of the fact necessary to uphold an exclusive possession—as that the possession was adverse in its commencement, and tolls the entry of the tenant not in possession." There was no more proof in that case than in the one now before us. But in *Thomas v. Garvan,* 15 N. C., 223, the facts were practically identical with those we have here and the same

rule was applied, *Judge Gaston,* for the court, saying: "The sole enjoyment of property for a great number of years, without claim from another, having right and under no disability to assert it, becomes evidence of a title to such sole enjoyment; and this not because it clearly proves the acquisition of such right, but because from the antiquity of the transaction, clear proof cannot well be obtained to ascertain the truth, and public policy forbids a possessor to be disturbed by stale claims when the testimony to meet them cannot easily be had. Where the law prescribes no specific bar from length of time, twenty years have been regarded in this country as constituting the period for a legal presumption of such facts as will sanction the possession and protect the possessor. We think the judge who tried this cause was correct in charging the jury that the twenty-one years' exclusive possession of the defendant, and her deceased husband, since the petitioner became discovert, did raise the legal presumption of an ouster," and barred the plaintiff's recovery. This was followed by *Cloud v. Webb,* 15 N. C., 290, which clearly shows the nature and extent of the presumption: "The possession of one tenant in common is in law the possession of all the tenants in common. One may, however, disseize or oust the others, and from the time of such ouster the possession of him who keeps out the rest is not their possession, but is adverse to their claims of possession. The sole silent occupation by one of the entire property, without an account to, or claim by the others, is not in law an ouster, nor furnishes evidence from which an ouster can be inferred, unless it has been continued for that length of time, which furnishes a legal presumption of the facts necessary to uphold an exclusive possession." This case was in turn followed by *Linker v. Benson,* 67 N. C., 150; *Covington v. Stewart,* 77 N. C., 148; *Neely v. Neely,* 79 N. C., 478; *Caldwell v. Neely,* 81 N. C., 114; *Page v. Branch,* 97 N. C., 97; *Bullin v. Hancock,* 138 N. C., 198; *Whitaker v. Jenkins,* 138 N.

C., 476. The same doctrine was applied in *Fisher v. Prosser,* 1 Cowper, 217; decided by the King's Bench in which Lord Mansfield presided as Chief Justice. It was said by *Justice Aston* in that case: "Now in this case, there has been a sole and quiet possession for 40 years, by one tenant in common only, without any demand or claim for an account by the other, and without any payment to him during that time. What is adverse possession or ouster, if the uninterrupted receipt of the rents and profits without account for near 40 years is not?" And by *Justice Willes:* "This case must be determined upon its own circumstances. The possession is a possession of 16 years above the 20 prescribed by the statute of limitations, without any claim, demand or interruption whatsoever; and therefore, after a peaceable possession for such a length of time, I think it would be dangerous now to admit a claim to defeat such possession."

The proof in this case showed an exclusive, quiet and peaceable possession by the defendants and those under whom they claim for more than 20 years, indeed for more than 40 years, and the law presumes that there was an actual ouster, not at the end of that period, but at the beginning and that the subsequent possession was adverse to the co-tenants who were out of possession. This converted the estate in common, as between the former co-tenants, into one in severalty, in the defendants, and defeated plaintiffs' right to partition or to an ejectment.

The disability of some of the parties, during the period when the possession was held by the defendants and those under whom they claim, cannot be permitted to rebut the presumption of the law as to the ouster, for the possession commenced in the lifetime of their ancestor, from whom they claim and who was at the time under no disability. *Seawell v. Bunch,* 51 N. C., 195. That was a case in which a deed was presumed to have been made after 20 years' possession. *Pearson, C. J.,* said: "Presumptions of the kind we are con-

sidering are made on the ground of public policy, in order to discourage litigation of stale demands and to quiet the possession of estates, and this policy would be in a great degree obstructed, if, after the presumption had commenced to arise, it was allowed to be stopped by some intervening circumstance other than an assertion of the right. Where the one party is exposed to an action at the commencement, and the other neglects to pursue his remedy, a subsequent disability cannot be allowed to prevent the principle from being carried out, for otherwise in a large proportion of cases, it would fail to take effect, and the policy of the law would be defeated. Our conclusion, both from analogy and from the "reason of the thing" is, that when the presumption has commenced, it is not stopped by a subsequent disability." The two cases are analogous. See also *Justice Ashhurst's* opinion in *Fisher v. Prosser,* 1 Cowper, at pp. 219-220. The ruling in *Seawell v. Bunch* is sustained by many cases, but we will only cite a few of them. *Mebane v. Patrick,* 46 N. C., 23; *Pearce v. House,* 4 N. C., 722; *Chancey v. Powell,* 103 N. C., 159; *Frederick v. Williams, Ibid.,* 189; *Andrews v. Mulford,* 2 N. C., 311; *Anonymous,* 2 N. C., 416; *Copeland v. Collins,* 122 N. C., 619. The rule as to the effect of 20 years' possession was adopted in analogy to the statute of limitations and when that statute begins to run against the ancestor, it is not suspended by any disability of the heirs at the time of descent. Wood on Limitations, 11; *Frederick v. Williams, supra.*

The view we have taken of the case makes it unnecessary to consider the question presented by counsel in their argument as to what is ordinarily necessary to render a possession sufficiently adverse to bar a right if continued for the requisite time, and as to whether any change in this respect has been wrought by The Code, section 146, Revisal 386. Too many cases have been decided by the court since that section was enacted as law, in which the rule we have stated as to a

presumed ouster has been recognized and applied, for us to hold at this time that the rule has been changed by it, at least where the eviction or ouster took place prior to 1868. *Bryan v. Spivey,* 109 N. C., at p. 70. In that case the ouster was in the same year as in this case, 1863. See also *Monk v. Wilmington,* 137 N. C., at p. 327, and *Ruffin v. Overby,* 88 N. C., 369. What is the true construction of section 146 of The Code (now Revisal, 386,) with reference to causes of action founded upon an ouster, which occurred since the date of its adoption, is left open for future consideration, when the matter is directly presented.

The court correctly charged the jury as to the effect of the facts proved in this case upon the plaintiffs' right to recover.

No Error.