IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1278

Filed: 6 October 2015

Currituck County, No. 06 SP 26

ATLANTIC COAST PROPERTIES, INC., Petitioner,

v.

ANGERONA M. SAUNDERS and husband, ALGUSTUS O. SAUNDERS, JR., LUCY M. TILLETT, PATRICIA W. MOORE-PLEDGER, GENEVIVE M. GOODMAN, LYNETTE C. WINSLOW, and CARLTON RAY WINSLOW, Respondents.

Appeal by Petitioner from order entered 29 May 2014 by Judge J. Carlton Cole in Currituck County Superior Court. Heard in the Court of Appeals 20 April 2015.

*Hornthal, Riley, Ellis & Maland, LLP, by M.H. Hood Ellis, for petitioner-appellant.*

*Vandeventer Black LLP, by Norman W. Shearin, for respondent-appellees.*

DIETZ, Judge.

In the early 1920s, three children inherited their father's 14-acre tract of land in Currituck County. One of the siblings remained on the property throughout his life and his descendants continue to live on the property today. The other two siblings moved out of state. Over time, interest in the property passed through inheritance until two families each owned an undivided one-half interest in the property: the family still living on the Currituck County property and another family living out of state.

The two families did not keep in touch, and the out-of-state family never visited the property. But for decades, the family living on the land recognized the interest of their out-of-state relatives in various ways, even at one point suggesting that they partition the property to give the out-of-state relatives sole title to their share.

All that changed in 2005, when the out-of-state family sold their interest in the property to Petitioner Atlantic Coast Properties, a private developer with no connection to either family. Respondents—the descendants of the original heir who stayed on the land—then asserted for the first time that they acquired sole title to the property nearly 80 years earlier by adverse possession under the theory of constructive ouster.

The trial court granted summary judgment in favor of Respondents, concluding that Atlantic Coast Properties failed to forecast sufficient evidence to rebut Respondents' showing of constructive ouster. We disagree.

If one cotenant has been in "sole and undisturbed possession and use of the property for twenty years, without any demand for rents, profits or possession by the cotenants, constructive ouster of the cotenants is presumed." *Herbert v. Babson*, 74 N.C. App. 519, 522, 328 S.E.2d 796, 798 (1985). But if the occupying tenant "does anything to recognize title of the cotenants during the twenty-year period, the presumption of ouster does not arise." *Id.*

2

Here, one of the out-of-state heirs testified that she spoke to the family still living on the property as recently as 2004 and they recognized her interest. Moreover, a family member living on the property testified that her father—one of the original heirs of the property—recognized the interests of her out-of-state relatives while he was alive and "raised her up" to understand that recognizing her out-of-state relatives' interest in the property was "the right thing to do."

To be sure, all of the original heirs to this property are long dead, so no one can testify directly to what was said in the 1920s or 1930s. But under Supreme Court precedent, a reasonable jury *could* conclude from this evidence that the family living on the property always recognized their out-of-state relatives' interests. That is all that is required to defeat summary judgment.

Private property rights are the bedrock of liberty in our nation. In a case like this one, where a joint property owner's rights are threatened through the legal fiction of constructive ouster, without any actual ouster, we must be particularly vigilant in applying the well-settled summary judgment standard and permitting a jury to resolve fact disputes. To hold otherwise would expose well-intentioned property owners across our State to losses from the legal gamesmanship of their cotenants. Accordingly, for the reasons discussed below, we reverse the trial court's entry of summary judgment and remand for further proceedings.

**Facts and Procedural History**

M.C. "Mack" Moore acquired a 14-acre tract of land in Currituck County, North Carolina, on 15 August 1887. Mack Moore and his wife, Angeronia Moore, lived on the property and had three children during their marriage: John Sherman Moore, William Guthrie "W.G." Moore, and Parlie Mae Moore Baxter. Mack Moore died intestate on 29 March 1921 and the 14-acre tract of land passed to his three children equally with each child obtaining a one-third interest in the property as tenants in common.

John Sherman Moore moved to Pennsylvania where he stayed until his death in 1980. He died intestate with no wife and no children and his one-third interest in the Moore property passed to his two siblings, W.G. Moore and Parlie Mae Moore Baxter, leaving each surviving sibling with a one-half interest in the property.

Parlie Mae Moore Baxter left Currituck County and moved to New York. She married Leroy Baxter, Sr. and had one child, Leroy Baxter, Jr. When Parlie Mae Moore Baxter died intestate, her one-half interest in the Mack Moore property passed to Leroy Baxter Jr.'s wife and daughter, Susan and Valentis Baxter, who survived him.

W.G. Moore married Edna Norman Moore, and together they had four children: Sherman Malachi Moore, William Friley Moore, Respondent Edna Mae

Moore Winslow,[1] and Respondent Angerona Lovie Moore Saunders. W.G. Moore was the only child of Mack Moore to continue to live on the Moore property. He lived on the property with his family and made improvements on the land over the years. W.G. Moore was still living on the Moore property when he died intestate in 1973 and his one-half interest in the property ultimately passed to his two surviving children, Respondents Edna Winslow and Angerona Saunders, giving them each a one-fourth interest in the property.

In 2005, Petitioner Atlantic Coast Properties purchased the one-half undivided interest of Susan Pratt Baxter and Valentis Baxter by quitclaim deed.

On 7 April 2006, Atlantic Coast Properties filed a petition to partition the Moore property claiming a one-half undivided interest in the property.

Respondents Edna Winslow and Angerona Saunders filed their answer and counterclaims on 17 May 2006, asserting sole possession and title by adverse possession. On 28 September 2007, Respondents moved for summary judgment. The trial court held a hearing on 10 February 2014. In an order entered 29 May 2014, the trial court granted Respondents' motion and entered judgment, finding Respondents to be "the owners solely seized in fee simple of all right, title, and interest in the Moore tract." The trial court based this conclusion "on the exclusive possession by W.G.

---

[1] Edna Winslow passed away during these legal proceedings and her heirs were substituted as Respondents.

5

Moore, and his heirs, and the presumption of ouster arising therefrom." Atlantic Coast Properties timely appealed.

## Analysis

Atlantic Coast Properties argues that the trial court erred in granting Respondents' motion for summary judgment because they forecasted evidence that, if accepted by the jury, would rebut the presumption of constructive ouster. We agree.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013). When ruling on a motion for summary judgment, "the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial." *Snipes v. Jackson,* 69 N.C. App. 64, 72, 316 S.E.2d 657, 661 (1984). "[S]ummary judgment should be granted with caution and only where the movant has established the nonexistence of any genuine issue of fact." *Moye v. Thrifty Gas Co.*, 40 N.C. App. 310, 314, 252 S.E.2d 837, 841 (1979). This Court reviews a grant of summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

Ordinarily, "the entry and possession of one tenant in common are presumed not to be adverse to his cotenants." *Town of Winton v. Scott*, 80 N.C. App. 409, 413,

342 S.E.2d 560, 563 (1986) (internal quotation marks omitted). With this presumption, one tenant in common cannot adversely possess against a cotenant without an ouster, either actual or constructive. *Collier v. Welker*, 19 N.C. App. 617, 620, 199 S.E.2d 691, 694 (1973).

Under the doctrine of constructive or presumptive ouster, "[i]f one tenant in common has been in sole and undisturbed possession and use of the property for twenty years, without any demand for rents, profits or possession by the cotenants, constructive ouster of the cotenants is presumed, and the ouster relates back to the initial taking of possession by the tenant in possession." *Herbert v. Babson*, 74 N.C. App. 519, 522, 328 S.E.2d 796, 798 (1985). "Not only does 20 years of exclusive possession raise a presumption of ouster, but it also supplies all the elements necessary to support a finding that the possession was adverse and included elements of notice and hostility." *Collier*, 19 N.C. at 621, 199 S.E.2d at 695. But if the party claiming adverse possession "does anything to recognize title of the cotenants during the twenty-year period, the presumption of ouster does not arise." *Herbert*, 74 N.C. App. at 522, 328 S.E.2d at 798.

Atlantic Coast Properties argues that it forecast at least some admissible evidence that W.G. Moore and his heirs recognized the interests of the cotenants continuously from 1921 until the present, and therefore the presumption of constructive ouster does not arise. We agree.

First, Susan Baxter, one of the out-of-state heirs, testified that Respondent Edna Winslow contacted her by phone around 2004 and "asked [Susan] what [she] and her daughter, Valentis, wanted to do *with their interest* in the M.C. (Mack) Moore property" because Respondents were planning to subdivide it. Ms. Baxter's testimony is confirmed by Respondent Edna Winslow's deposition testimony, in which Ms. Winslow indicated that she believed the proposed subdivision would have included the Baxters. Respondents also admitted to hiring a surveyor around the same time to "assist with the subdivision" of the property, further confirming Susan Baxter's testimony.

Second, Respondents conceded that their recognition of the Baxters' interests also was a view shared by their father, W.G. Moore, one of the three original heirs of the Moore property. Respondent Edna Winslow testified as follows when asked about the proposed subdivision of the property:

> [Ms. Winslow]: [W]hat we was trying to do was get the property - - *everybody's interest in the property* could get their own deeds. That was the main interest, so we didn't have to pay taxes all the time.
>                                  . . .
> Q. Okay. And tell me - - the same thing I asked your sister was *who is everybody*? In other words, who was included in this subdivision?
>
> [Ms. Winslow]: Well, along then when we first started it was my brothers and my sister, and their wife.
>
> Q. *Were the Baxters included in this*?

[Ms. Winslow]: *Yeah.  Everybody that had an interest in it.*

Q.  Okay.  And why were you going to include the Baxters if you had no relationship with them?

[Ms. Winslow]: Because that's the way we were raised up and that's the law.

. . .

Q.  Okay.  And what I was asking was, *is the reason the Baxters were included because your mom and your dad had raised you all to do the right thing*?

[Ms. Winslow]: *Yes.*

Q.  *And they had acknowledged the Baxters' ownership interest,* and that's why you and your sister thought that you should; is that fair?

[Ms. Winslow]: *Yes.*

Ms. Winslow also testified that she had known of the Baxters' interests "since growing up in [her] mom and dad's house" because family members often talked about these out-of-state heirs to the property.  Ms. Winslow's sister, Angerona Saunders, also testified that she recognized the Baxters' interests because "that's something [she] felt like [her] mother and father would have wanted [her] to do" and "something that they would have done."

Finally, Susan Baxter testified that it was not until after the Baxters sold the property to Atlantic Coast Properties that Edna Winslow first contacted her and told her that "[she] and her daughter had no interest in the M.C. (Mack) Moore property because [she] and her daughter had not paid any of the property taxes."

All of this evidence, taken together and viewed in the light most favorable to Atlantic Coast Properties, creates a genuine issue of material fact as to whether W.G. Moore and his heirs recognized the ownership interest of the Baxters, thus defeating the presumption of constructive ouster.

The dissent contends that, although there is evidence that Respondents and their father, W.G. Moore, recognized the ownership interest of the Baxters generally, "there is only speculation that W.G. Moore did anything to recognize the Baxters' interest in the property during the twenty year period from 1921 to 1941." The dissent contends that all evidence after 1941 is essentially irrelevant because, once W.G. Moore obtained sole title by adverse possession, recognition of the Baxters' interests by him or his daughters could not divest him of that sole interest.

Our Supreme Court considered and rejected this precise argument in a nearly identical context, holding that evidence from outside a particular twenty-year period can be used to infer a consistent position within that twenty-year period. *See Clary v. Hatton*, 152 N.C. 107, 67 S.E. 258, 259 (1910). In *Clary*, three siblings inherited property from their parents in 1872. *Id.* The brother lived on the property during his lifetime; his two sisters did not. When the brother died in 1908, his heirs claimed the entire property by adverse possession. *Id.* Although there was no evidence that the brother recognized his sisters' interests from 1872 to 1892, the sisters presented evidence that their brother acknowledged their interest in 1900, telling another man

10

that "he only claimed or owned one third of the lot and his sister each owned a third." *Id.* The Supreme Court held that the brother's "declaration in 1900 in acknowledgement and recognition of his sisters' title is evidence that prior to then he had never claimed adversely to them." *Id.* This was sufficient evidence "to go to a jury that the possession of [the brother] was never adverse to the rights of his sisters . . . and that consequently [the brother] acquired no title by reason of his possession." *Id.*

Here, too, W.G. Moore's recognition and acknowledgement of the Baxters' interests is sufficient to send the case to a jury. There is testimony that W.G. Moore recognized the Baxters' interest, that he taught his two daughters about the Baxters' interests when they were children, that the family talked about the Baxters' interests at family gatherings, and that W.G. Moore instilled in his daughters the belief that recognizing that interest—despite the fact that the Baxters never came to visit the property—was "the right thing to do."[2] From this testimony, a jury readily could infer that W.G. Moore recognized the interests of the Baxter family consistently throughout his lifetime, including the period from 1921 to 1941. See *Clary*, 152 N.C. at 107, 67 S.E. at 259. This is particularly true here, because there is no evidence in this record indicating that W.G. Moore had a change of heart after 1941, or that he

---

[2] The dissent has a different interpretation of some of this testimony, one that is considerably more favorable to Respondents. That interpretation is a perfectly reasonable one as well. But this is summary judgment, so we must interpret all testimony in the light most favorable to Atlantic Coast Properties, the non-moving party. *Singleton*, 280 N.C. at 465, 186 S.E.2d at 403.

felt differently about the Baxters (his own sister and her family) in the 1920s and 1930s than he did for the rest of his life. Thus, under *Clary*, Atlantic Coast Properties has forecast sufficient evidence to survive summary judgment.

Finally, there are important policy reasons for following *Clary* and reversing the entry of summary judgment in this case. As this Court previously has observed, a rule requiring specific, concrete evidence from each twenty-year time period could encourage a cotenant "to deal with his fellow tenants in a less than open and honest manner." *Sheets v. Sheets*, 57 N.C. App. 336, 338, 291 S.E.2d 300, 301 (1982). An occupying tenant could repeatedly reassure his cotenants that their interests are secure and then, after the passage of time has removed the records or witnesses, abruptly change position and claim title by constructive ouster occurring decades, or even centuries, ago.

Private property rights are the bedrock of liberty. It is one thing to lose property rights to the open and notorious adverse possession of another. But in a case like this one, where a joint property owner's rights are threatened through the legal fiction of constructive ouster without any actual ouster, courts must be particularly vigilant in applying the well-settled summary judgment standard and permitting a jury to resolve fact disputes about who told what to whom.

Accordingly, we hold that Respondent Edna Winslow's direct testimony that her father W.G. Moore recognized the Baxters' interest during his lifetime (although

without specifying any particular time frame) and that he raised her up to do the same, together with the complete absence of any evidence suggesting W.G. Moore ever felt differently at any point in his life, constitutes "more than a scintilla" of evidence from which the jury could conclude that Moore recognized his sister's interest throughout his entire life, including from 1921 to 1941.[3]  Accordingly, we reverse the trial court's entry of summary judgment and remand this case for further proceedings.

## Conclusion

Atlantic Coast Properties forecasted sufficient evidence to create a genuine issue of material fact on the issue of whether W.G. Moore and his heirs recognized the title of their cotenants and defeated any claim of constructive ouster.  Accordingly,

---

[3] The dissent also contends that Ms. Winslow's deposition testimony in which she testified that her father, W.G. Moore, recognized the Baxters' interest during his lifetime was the product of an objectionable deposition question and was inadmissible hearsay:

> Q.  And they [Ms. Winslow's mother and father] had acknowledged the Baxters' ownership interest, and that's why you and your sister thought that you should; is that fair?
>
> [Ms. Winslow]: Yes.

There is nothing improper about the form of this question—it is not a compound question and it is not vague or confusing.  *See, e.g.*, *State v. Hughes*, 159 N.C. App. 229, 582 S.E.2d 726 (2003).  And the response is a statement by a party-opponent, Respondent Edna Winslow, manifesting her adoption or belief in the truth of her father's statement, thus qualifying it under one of the most fundamental and commonly invoked hearsay exceptions.  *See* N.C. Gen. Stat. § 8C-1, Rule 801(d). Lastly, these are evidentiary arguments not raised by Respondents in their summary judgment papers or at the hearing.  Appellate courts ordinarily do not address evidentiary arguments not raised and preserved in the trial court.  *See Plemmer v. Matthewson*, 281 N.C. 722, 725, 190 S.E.2d 204, 206 (1972).

we reverse the trial court's order granting summary judgment in favor of Respondents.

REVERSED AND REMANDED.

Judge HUNTER, JR. concurs.

Chief Judge McGEE dissents in a separate opinion.

No. COA14-1278 – Atl. Coast Props., Inc. V. Saunders

McGEE, Chief Judge, dissenting.

Because I believe the trial court properly granted summary judgment in favor of Respondents, I dissent.

"On appeal, an order allowing summary judgment is reviewed *de novo*." *Park East Sales, L.L.C. v. Clark-Langley, Inc.*, 186 N.C. App. 198, 202, 651 S.E.2d 235, 238 (2007) (citation omitted). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.

> "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.'" Our Supreme Court has held that "an issue is genuine if it is supported by substantial evidence, and [a]n issue is material if the facts alleged . . . would affect the result of the action[.]" Furthermore, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]"

*Andresen v. Progress Energy, Inc.*, 204 N.C. App. 182, 184, 696 S.E.2d 159, 160-61 (2010) (citations omitted); *see also Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 682, 443 S.E.2d 114, 122 (1994) .

In *Herbert v. Babson* this Court stated:

> A tenant in common may . . . acquire the title of cotenants by constructive ouster. If a cotenant occupies the entire property for twenty years to the exclusion of a cotenant it is presumed there was an ouster at the time of the entry and it is presumed the action of the occupying cotenant during this period includes everything necessary to establish adverse possession.

*Herbert v. Babson*, 74 N.C. App. 519, 521, 328 S.E.2d 796, 798 (1985) (citations

omitted). This Court further stated that:

> If one tenant in common has been in sole and undisturbed
> possession and use of the property for twenty years,
> without any demand for rents, profits or possession by the
> cotenants, constructive ouster of the cotenants is
> presumed, and the ouster relates back to the initial taking
> of possession by the tenant in possession. However, if the
> tenant in possession does anything to recognize title of the
> cotenants during the twenty-year period, the presumption
> of ouster does not arise.

*Id.* at 522, 328 S.E.2d at 798 (citations omitted).

> The presumption includes everything necessary to be
> proved when the title can be ripened only by actual adverse
> possession as defined by this Court, and is a most
> reasonable inference of the law and justified under the
> circumstances, first, because men do not ordinarily sleep
> on their rights for so long a period, and, second, because a
> strong presumption arises that actual proof of the original
> ouster has become lost by lapse of time.

*Dobbins v. Dobbins*, 141 N.C. 210, 216, 53 S.E. 870, 872 (1906); *see also Collier v.*

*Welker*, 19 N.C. App. 617, 621-22, 199 S.E.2d 691, 695 (1973).

W.G. Moore lived on the disputed real property ("the property") from 1921 until

his death in 1973. During that time, W.G. Moore farmed the property. His children,

including Angerona Moore Saunders ("Angerona Saunders") and Edna Moore

Winslow ("Edna Winslow") (together, "Respondents"), were born on the property.

W.G. Moore built a new home on the property in 1952 and then demolished the

original house. Both W.G. Moore and his wife, Edna, are buried on the property,

along with other family members. Neither Parlie Moore Baxter, nor any of her heirs ("the Baxters"), occupied the property after 1921. The Baxters never paid taxes on the property nor demanded rents, profits or possession at any time. *Herbert*, 74 N.C. App. at 522, 328 S.E.2d at 798. In fact, there is no evidence of any communication whatsoever between the Baxters and the W.G. Moore family until the early 1980s when Respondents attempted to contact the Baxters, but received no response.

Approximately eighty-five years passed between the time W.G. Moore and his family became the sole occupants of the property in 1921 and the filing of this action in 2006. In order for Respondents to prevail, there need only have been one uninterrupted twenty-year period within those eighty-five years to satisfy the requirements set forth in *Herbert*. *See Ellis v. Poe*, 73 N.C. App. 448, 451, 326 S.E.2d 80, 83 (1985) (events occurring after the twenty-year period was complete could not "constitute an acknowledgment of cotenancy" by the occupier). Once the requirements of adverse possession by constructive ouster have occurred, title has passed. *Id.* Petitioner acknowledges that all the requirements for constructive ouster were present except, Petitioner contends, "[W.G.] Moore and his family recognized the title of his brother and sister in the . . . property thus . . . rebutting any presumption of ouster." Our Supreme Court has acknowledged the strong presumption that the requirements of adverse possession have been satisfied in

situations where the sole possession of the property in question by a cotenant was far

shorter than is the case here:

> *Justice Aston* [reasoned] in that case: "Now, in this case, there has been a sole and quiet possession for 40 years, by one tenant in common only, without any demand or claim for an account by the other, and without any payment to him during that time. What is adverse possession or ouster, if the uninterrupted receipt of the rents and profits without account for near 40 years is not?" And by *Justice Willes*: "This case must be determined upon its own circumstances. The possession is a possession of 16 years above the 20 prescribed by the statute of limitations, without any claim, demand, or interruption whatsoever; and therefore, after a peaceable possession for such a length of time, I think it would be dangerous now to admit a claim to defeat such possession."
>
> The proof in this case showed an exclusive, quiet, and peaceable possession by the defendants and those under whom they claim for more than 20 years – indeed for more than 40 years – and the law presumes that there was an actual ouster, not at the end of that period, but at the beginning, and that the subsequent possession was adverse to the cotenants who were out of possession. This converted the estate in common, as between the former cotenants, into one in severalty, in the defendants, and defeated plaintiffs' right to partition or to an ejectment.

*Dobbins*, 141 N.C. at 218, 53 S.E. at 873 (citations omitted).

Assuming, *arguendo*, that Respondents "recognized the title" of the alleged

cotenants, this "recognition" is immaterial if full title had already passed to W.G.

Moore at some earlier date. W.G. Moore would have obtained full title to the property

so long as he did not do anything to recognize title in the Baxters for any continuous

twenty-year period between 1921 and his death in 1973. Once the requirements for constructive ouster for a twenty-year period were met, W.G. Moore obtained sole title to the property pursuant to adverse possession. *Dobbins*, 141 N.C. at 217, 53 S.E. at 873. Once W.G. Moore, along with his wife, became sole owners of the property, they could do with it as they pleased – including deciding to give a portion of it to the Baxters. *Beck v. Beck*, 125 N.C. App. 402, 406, 481 S.E.2d 317, 320 (1997). I believe Petitioner fails to forecast sufficient evidence to rebut the presumption of ouster. Choosing a twenty-year period during W.G. Moore's occupancy of the property, there is only speculation that W.G. Moore did anything to recognize the Baxters' interest in the property during the twenty year period from 1921 to 1941.

Angerona Saunders was asked at her deposition:

> [Petitioner's Attorney]: And the reason you and your sister were, I take it, honoring that interest [the Baxters' purported interest] was that that's something you felt like your mother and father would have wanted you to do?
>
> [Saunders]: Yes.
>
> [Petitioner's Attorney]: And something that they would have done?
>
> [Saunders]: Yes, I believe they would have done that.

Petitioner's attorney asked Angerona Saunders if it was true that she "would not even have contacted [the Baxters] had you not thought that was consistent with your mother's and father's desires?" Angerona Saunders responded that she believed in

"doing things the right way" and in "doing it fair." Angerona Saunders acknowledged that that was how her parents "raised [her]."

Initially, Angerona Saunders nowhere stated that her parents at any time did anything to acknowledge the Baxters' interest in the property. Angerona Saunders merely stated that she believed her parents would have wanted the Baxters to share in ownership of the property because it was the "right thing" to do. This is merely Angerona Saunders "belief," it does not forecast the presence or absence of any fact. Further, there is no indication of when Angerona Saunders' parents might have decided that they would share ownership of the property – assuming *arguendo* they ever made such a decision. There is certainly nothing indicating that Angerona Saunders' parents held this belief or in any way did anything acknowledging the Baxters' interest in the property between 1921 and 1941. Angerona Saunders' "belief" in what her parents would have wanted her to do does not constitute evidence sufficient to rebut the presumption of ouster.

In addition, Angerona Saunders was born in 1948, seven years after the relevant period ended. Angerona Saunders could not have had any personal knowledge of what occurred between 1921 and 1941. When Angerona Saunders was asked "[d]o you ever remember your dad discussing anything about his interest in the property[,]" she answered, "No." Angerona Saunders testified that she knew that Parlie Moore Baxter "lived in New York. I knew nothing about her, not one thing

about" the Baxters other than that W.G. Moore's sister had married a Baxter and had a son named Leroy.[4] Angerona Saunders testified that W.G. Moore never talked to her about why he never tried to contact his sister or her family. When asked if there was "[a]nything else that you can recall your dad or your mom saying about the Baxters[,]" Angerona Saunders answered, "[n]ope." When Angerona Saunders was asked if W.G. Moore had "ever indicate[d] to you all that he was aware that [the Baxters] had an ownership interest in the property[,]" Angerona Saunders answered: "He just told us that it was his father and just told us who they was. But that's about it, what he said." When asked who she thought owned the property when she was growing up, Angerona Saunders answered that "we was under the impression that [W.G. Moore] was the one that owned it then, that nobody else was there or showed up, no more than he and [his brother] Uncle Sherman." Angerona Saunders testified that she never heard W.G. Moore and her Uncle Sherman discuss the property, and she never heard her mother or "anyone else" "mention anything about anyone else owning any interest in the property[.]" Angerona Saunders never "conceded that [her] recognition of the Baxters' interests also was a view shared by [her] father[.]" Concerning the survey that was conducted in 2007 showing a division of the property into plots, Angerona Saunders stated they had the survey done because "[w]e were

---

[4] Though the "family tree" included in the record indicates that Parlie Moore Baxter died in 1980, both Angerona Saunders and Edna Winslow testified that Parlie Moore Baxter died before either of them was born.

- 7 -

going to convey them [some of the plots] to [the Baxters]."

Edna Winslow also gave deposition testimony in which she acknowledged that her parents had "raised [her] to do the right thing." The following exchange occurred at her deposition:

> [Petitioner's Attorney]: And [your parents] had acknowledged the Baxters' ownership interest, and that's why you and your sister thought that you should [partition the property]; is that fair?
>
> [Winslow]: Yes.
>
> [Respondents' attorney]: Objection. Object to the form of the question.
>
> [Petitioner's Attorney]: Well, tell me in your own words why you felt like you needed to recognize the Baxters' interest by including them in the division?
>
> [Winslow]: Well, at the time we were going by what, you know . . . we were doing it because it was Mack Moore's heirs.

Edna Winslow's testimony demonstrates her belief that including the Baxters was "the right thing" to do, and that that was "how her parents had raised her." The portion of Edna Winslow's testimony where she answered affirmatively to Petitioner's attorney's leading question concerning her parent's acknowledgment of "the Baxters' interest" was objected to, and Petitioner's attorney rephrased the question as a non-leading question. Edna Winslow's subsequent testimony was that she and Angerona Saunders were planning on including the Baxters in the partition of the property

because the Baxters were "Mack Moore's heirs."

Edna Winslow was born in 1943, two years after W.G. Moore had continuously occupied the property for twenty years. Edna Winslow did not have any personal knowledge of how either W.G. or Edna Moore treated the property during that time period. When Edna Winslow was asked: "So about the only conversation you ever heard your dad say about [Parlie Moore Baxter] was that she had married a Baxter[,]" Edna Winslow answered: "Right." Edna Winslow testified that she didn't even know if W.G. Moore knew that the Baxters lived in New York and that she learned most of what she knew about the Baxters "from Uncle Sherman." Edna Winslow stated that her Uncle Sherman told her about the Baxters, but that her mother "never talked about" any interest the Baxters might have had in the property. Edna Winslow knew that Parlie Moore Baxter was the daughter of Mack Moore "by Uncle Sherman telling us; and daddy told us he had a sister, but she was dead." I do not understand Edna Winslow's testimony to have been "that she had known of the Baxters' interest 'since growing up in [her] mom and dad's house' because family members often talked about these out-of-state heirs to the property." Edna Winslow testified in the following manner:

> [Winslow]: [The Baxters] were Mack Moore's heirs, I guess.
>
> [Petitioner's Attorney]: Okay. And that's something that you had known since growing up in your mom and dad's house?

[Winslow]: Yeah. Uncle Sherman told us a lot about them.

[Petitioner's Attorney]: What did he tell you a lot about?

[Winslow]: He just told us that [Parlie Moore Baxter] had died and she had one son, and he was in a wheelchair.

Edna Winslow then agreed with Petitioner's attorney's question: "[T]hat's where your deceased aunt's interest had ended up, was either with her husband or her son?" Unfortunately, as the trial court was informed, Edna Winslow died before the summary judgment hearing and would not be available to testify were this matter to proceed to trial.

There is nothing in Edna Winslow's testimony constituting evidence that W.G. Moore ever did anything acknowledging any interest of the Baxters' in the property, much less that he did so in the period between 1921 and 1941. Further, even if we were to consider this portion of the deposition as proof that W.G. Moore acknowledged the Baxters' interest in the property, there is no evidence allowing us to determine when he did so. Because over eighty years have passed and Petitioner presented no evidence to the trial court that W.G. Moore did anything to acknowledge the Baxters' interest in the property from 1921 to 1941, "a strong presumption arises that actual proof of the original ouster has become lost by lapse of time." *Dobbins*, 141 N.C. at 216, 53 S.E. at 872.

I can find no testimony that "W.G. Moore . . . taught his two daughters about the Baxters' interests when they were children, [or] . . . talked about the Baxters'

interests at family gatherings[.]" The only testimony supporting the statement in the majority opinion that "W.G. Moore recognized the Baxters' interest" is the objected to statement of Petitioner's attorney at Edna Winslow's deposition to which Edna Winslow initially agreed. None of Edna Winslow's personal deposition statements indicate she ever discussed any interest the Baxters might have had in the property with her father. Angerona Saunders testified that W.G. Moore never discussed such matters with her, and growing up she understood her father to have owned the property. Petitioner has produced no witness testimony from anyone who was alive before 1941, nor any testimony from anyone who witnessed W.G. Moore do or say anything recognizing the Baxters' interest in the property during that time period.

It is correct that our Supreme Court in *Clary* considered testimony of a witness to defeat a presumption of ouster. In *Clary*, a witness testified, concerning the cotenant brother John Hatton ("Hatton"), who had resided on the property in question for over twenty years before his death, and who had told the witness that

> eight years before he died, and while [Hatton] was then living on the lot, that he only claimed or owned one-third of the lot, and his sisters each owned a third, and for that reason he had not improved it and did not wish to spend any money on it.

> These declarations of John Hatton are inconsistent with a claim of sole ownership or exclusive possession, and are competent, not to impeach any title that he had already acquired by twenty years' possession, but to show that *in reality he had never acquired any title by such possession*, because his possession during the entire period it

- 11 -

> continued, from 1872 to the day the declaration was made, was of a permissive and not of an adverse character; and that is was with his sisters' consent. This would tend to rebut any presumption of an ouster at any time prior to such declaration.

*Clary v. Hatton*, 152 N.C. 107, 109, 67 S.E. 258, 259 (1910) (emphasis added). I emphasize the portion of the quote above because I want to make clear that once title is acquired through adverse possession, no subsequent acknowledgment to the contrary will defeat it. I do not maintain that "all evidence after 1941 is essentially irrelevant." The holding in *Clary* stands for the proposition that an occupying cotenant's statements may be used to prove he never acquired sole title in the first instance.

I disagree that the situation in *Clary* is nearly identical to the one before us. In *Clary*, the witness testified that he had had a conversation with Hatton in 1900, and that Hatton expressly stated that his occupation was permissive. The witness in *Clary* was alive and testified to this conversation directly, and Hatton's statement was made only eight years after the relevant period. Further, Hatton died in 1908, and the action was brought against his heirs in early 1909. In the present case, Edna Winslow was not yet alive in the relevant period; because she passed away following her deposition, she can make no clarification concerning her understanding of the Baxters' "interest" beyond the clarification discussed above; and the Baxters never brought suit against Defendants. Further, the statement made by Hatton in *Clary*

was unequivocal. In the present case we can only speculate concerning whether W.G. Moore even made a statement, much less what his meaning and intent might have been. Finally, the Baxters did not act immediately to protect their interest. They did nothing for approximately eighty-five years until Petitioner purchased whatever interest they might have had. Now Petitioner is attempting to determine what W.G. Moore's state of mind was approximately sixty-five years ago.

In my opinion it is the "strong presumption . . . that actual proof of the original ouster has become lost by lapse of time" that defeats Petitioner's challenge to the granting of summary judgment. W.G. and Edna Moore are deceased. Without any tangible evidence of an acknowledgment of the Baxters' interest during the relevant period, and with no testimony raising more than a permissible inference that there was no twenty-year period in which Moore failed to acknowledge the Baxters' interest, I would hold that summary judgment was correct. The evidence presented to the trial court could only allow the jury to infer that W.G. Moore might have recognized an interest in the Baxters at some unknown time. The presumption in *Dobbins* is tailored for the situation before us. The presumption is that evidence of W.G. Moore's intent to solely possess the property has been lost due to the passing of approximately eighty-five years in which the Baxters failed to assert their rights.

> The sole enjoyment of property for a great number of years, without claim from another, having right and under no disability to assert it, becomes evidence of a title to such a sole enjoyment; and this not because it clearly proves the

> acquisition of such right, but because from the antiquity of the transaction, *clear proof cannot well be obtained* to ascertain the truth, and *public policy forbids a possessor to be disturbed by stale claims when the testimony to meet them cannot easily be had.* Where the law prescribes no specific bar from length of time, 20 years has been regarded in this country as constituting the period for a legal presumption of such facts as will sanction the possession and protect the possessor.

*Dobbins*, 141 N.C. at 216-217, 53 S.E. at 872 (citation and quotation marks omitted) (emphasis added); *see also id.* at 216, 53 S.E. at 872 ("'The possession of one tenant in common is in law the possession of all his cotenants, because they claim by one common right. When, however, that possession has been continued for a great number of years, without any claim from another who has a right, and is under no disability to assert it, it will be considered evidence of title to such sole possession; and where it has so continued for twenty years, the law raises a presumption that it is rightful, and will protect it. *This it will do, as well from public policy, to prevent stale demands, as to protect possessors from the loss of evidence from lapse of time.*'") (citation omitted) (emphasis added). Our Supreme Court has already addressed the policy considerations inherent in this type of property dispute involving "stale claims when the testimony to meet them cannot easily be had." *Id.*

The Baxters did nothing to claim any right in the property for approximately eighty-five years, and the testimonies of Angerona Saunders and Edna Winslow do not constitute "more than a scintilla [of evidence] or a permissible inference" that

W.G. Moore ever did anything to recognize the Baxters' interest in the property. *Id.*

(citation omitted). This constituted a constructive ouster.

> [Constructive ouster] is a disseizin by one tenant of his cotenant, the taking by one of the possession and holding it against him by an act or series of acts which indicate a decisive intent and purpose to occupy the premises to the exclusion and in denial of the right of the other. This is what the law presumes, whether it be in exact accordance with the real facts or not. It is a presumption the law raises to protect titles, and answers in the place of proof of an actual ouster and a supervening adverse possession. The presumption includes everything necessary to be proved when the title can be ripened only by actual adverse possession as defined by this [c]ourt[.]

*Dobbins*, 141 N.C. at 215-16, 53 S.E. at 872. I would hold that there is no genuine

issue of material fact and that summary judgment was proper.